Elbert M. Oliver, Appellant, v. Retirement Board of the Municipal Employees' Annuity and Benefit Fund of Chicago, Appellees.

Gen No. 41,712.

Heard in the third division of this court for the first district at the December term, 1940. Opinion filed June 25, 1941.

John F. Cusack and James J. Cusack, Jr., both of Chicago, for appellant; Robert Irmiger, of Chicago, of counsel.

Barnet Hodes, Corporation Counsel, for appellee; George F. Mulligan, Assistant Corporation Counsel, of counsel.

Mr. Presiding Justice Burke delivered the opinion of the court.

Elbert M. Oliver was born on May 27, 1897. On August 27, 1927, he was appointed to the position of motor truck driver in the classified service of the city of Chicago. On October 14, 1932, while so employed he injured his right knee. Because of this injury he was forced to quit working on January 8, 1933. At the time he was injured he was the father of four children under 18 years of age, namely, Erna, born August 10, 1919; Elbert, Jr., born July 9, 1921; Harry, born July 17, 1923, and Ira, born April 17, 1925. Since such injury Erna and Elbert, Jr. have arrived at the age of 18 years. Ira died on May 19, 1933. The youngest child, Harry, will become 18 years of age on July 17, 1941. Oliver was a contributor to and a participant in the fund being administered by the Retirement Board of the Municipal Employees Annuity and Benefit Fund of Chicago, and on February 17, 1933, that Board granted to him a "Duty Disability Benefit" and a "Child's Disability Benefit." From January 9, 1933, to February 28, 1935 he received "Duty Disability Benefit" of approximately 75 per cent of his salary as of July 1, 1931. During this period he also received a "Child's Disability Benefit" of approximately 15 per cent of his salary as of July 1, 1931. However, on April 1, 1935 the Board claimed that his payments from January 9, 1933 to February 28, 1935 were excessive, and though he still had eligible dependent children, his total payments were reduced to approximately 75 per cent of his salary as of July 1, 1931. The Board asserted that the overpayments amounted to $741.95 and this amount was deducted from subsequent payments. His salary on July 1, 1931 was $2,250 per year. During this period of economic distress experienced by the city during 1931 and subsequent years, a reduction of one and one-half days' pay per week, or 78 days per year, amounting to practically 21 per cent, was made by authority of

the city council in the wages paid to city employees subsequent to July 1, 1931. This reduction brought plaintiff's salary down to $1,811.64. On February 9, 1940 Oliver served a notice on the Board for payment of benefits under the provisions of pars. 1089 and 1100½, ch. 24, Ill. Rev. Stat. 1939 (secs. 46 and 57½) [Jones Ill. Stats. Ann. 100.051, 100.066]. On May 17, 1940 the Board rejected Oliver's demand. Thereupon he filed a complaint in the superior court of Cook county for a writ of certiorari and the writ was issued. The return to the writ set up the facts substantially as above recited. The court entered judgment that the writ of certiorari be quashed. The court certified that a constitutional question was involved. Plaintiff appealed to the Supreme Court, which in turn transferred the case to this court. (375 Ill. 641). In transferring the case the Supreme Court said (642):

"The trial court certified that a constitutional question is involved. Counsel for appellant here states that he has some doubt about the existence of a constitutional question in the appeal, but that because of the certificate of the trial court he felt the matter should be presented here. Cases involving only the construction of a statute do not involve a constitutional question and the certificate of the trial judge that a constitutional question is involved does not confer upon this court jurisdiction on direct review." As suggested by the Supreme Court, this case involves the construction of two sections of a statute. In the briefs filed in the Supreme Court neither party contended that any part of the two sections was unconstitutional. Sec. 46 (par. 1089) ch. 24, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 100.051], reads:

"Benefit to be known as 'Duty Disability Benefit' shall be provided for municipal employees in the service who shall become disabled as the result of injury incurred in the performance of any act or acts of duty.

"Benefit to be known as 'Child Disability Benefit' shall be provided for municipal employees disabled as stated in the preceding paragraph who shall be the parents of any unmarried child or children less than eighteen (18) years of age.

"Any municipal employee less than sixty-five (65) years of age, who shall become disabled . . . as the result of injury incurred . . . in the performance of any act or acts of duty, shall have a right to receive Duty Disability Benefit, during any period of such disability for which such municipal employee shall not receive nor have a right to receive salary, of an amount equal to seventy-five (75) per cent of his salary as it shall be at the time of such injury; . . . Any such municipal employee shall also have a right to receive Child's Disability Benefit of amounts of ten (10) dollars a month on account of each child (the issue of such municipal employee) less than eighteen (18) years of age; provided, the total amount of Child's Disability Benefit which shall be granted or paid to any such municipal employee shall not exceed fifteen (15) per cent of the salary as aforesaid, to such municipal employee. . . ." Sec. 57½ (par. 1100½) reads:

"Notwithstanding the provisions of any foregoing section or sections of this Act, it shall be assumed that, for the compensation annuity and disability benefit purposes of this Act, the annual salary of any participant in or contributor to this fund, shall be the amount, not in excess of three thousand dollars ($3,000.00), set out and appropriated for the position held by such participant or contributor in the annual budget or appropriation bill of such city: Provided, however, that for the purpose of computing compensation annuity and duty disability benefit under this Act, from and after July 1, 1931, where the disability or death has resulted or shall result from injury incurred on or after July 1, 1931, such salary shall be assumed to be not less than the same amount, not in excess of

three thousand dollars ($3,000.00), that such salary was on July 1, 1931. . . .'' The act providing for the employees' annuity and benefit fund was approved by the Governor on July 29, 1921. Sec. 46 (par. 1089) was amended in 1923, 1931 and 1935. Sec. 57½ (par. 1100½) is an added section approved October 4, 1932. Because of an "emergency clause" sec. 57½, became effective immediately. As plaintiff was injured on October 14, 1932, after this added section went into effect, his rights in the instant case are governed by sec. 46 (par. 1089) and sec. 57½ (par. 1100½). Sec. 57½ (par. 1100½) provides that for the purpose of computing duty disability benefits the salary of the employee affected shall be assumed to be not less than such salary was on July 1, 1931, but does not mention the "Child's Disability Benefit." Although sec. 46 (par. 1089) was amended in 1935, the provision for a "Child's Disability Benefit" was not altered. Before the enactment of sec. 57½, the minimum "Duty Disability Benefit" was 75 per cent of the salary of the employee at the time of his injury and while incapacitated he would receive 25 per cent less than his salary during such period. When the city reduced the salaries of all employees in 1931, this 25 per cent added to the reduction of 21 per cent, left an injured employee receiving as duty disability allowance 40 per cent less than the salary he would receive if he were working. The legislature sought to remedy this evil and so enacted sec. 57½, which provided that duty disability benefit should be allowed on the basis of the employee's salary as of July 1, 1931, if such salary were "not in excess of $3,000.00 per year."

Plaintiff refers to the salary fixed as of July 1, 1931 as the "pegged salary." It is conceded that the effect of sec. 57½ is to give the injured employee a duty disability benefit of practically 94 per cent of his actual salary at the time of such injury, without taking into consideration any right he may have to a "Child's

Disability Benefit." Plaintiff contends that the provisions for "Child's Disability Benefit" (sec. 46) are not in any way affected by sec. 57½, and that since the salary basis for computing "Child's Disability Benefit" is not changed by sec. 57½, the "Child's Disability Benefit should be computed under sec. 46 on the basis of the present salary. He maintains that "Duty Disability Benefit" should be based on his salary as of July 1, 1931, and the "Child's Disability Benefit" on his salary as of the time he was injured. Plaintiff insists that sec. 57½ does not furnish an excuse to the Board for wiping out the "Child's Disability Benefit." If the contention of plaintiff is upheld, he will receive approximately 108 per cent of his actual salary as of the day he was injured. Respondent suggests that to so hold would render sec. 57½ unconstitutional, and cites the case of *Porter v. Loehr,* 332 Ill. 353, in support of the proposition that an act increasing a pension after the services have been rendered is unconstitutional. In that case the Supreme Court struck down certain enactments increasing the pensions of retired policemen for services previously rendered, as in violation of sec. 19, art. 4, of the Constitution of this State, which provides, among other things, that "the general assembly shall never grant or authorize extra compensation, fee or allowance to any public officer, agent, servant or contractor, after service has been rendered or a contract made." The principle recognized in the *Porter* case is not applicable to the instant case because at the time of plaintiff's disabling injury, both secs. 46 and 57½ were in full force and effect. The cases cited by defendant are cases wherein employees already receiving pensions attempted to take advantage of pension increases provided by subsequent legislation.

Our Supreme Court has held that pension statutes are to be liberally construed in favor of the persons to be benefited thereby. Our view is that the language of

secs. 46 and 57½ is clear and unambiguous. In *Colton v. Board of Trustees, Firemen's Pension Fund,* 287 Ill. 56, our Supreme Court said (59):

"In the construction of statutes courts should consider every part and give sensible and intelligent meaning to every provision so far as possible, but the legislative intent must be found in the act and the court must take the words found in the statute according to their ordinary and usual meaning." Sec. 46 provided for two separate and supplemental benefits to disabled employees, namely, a "Duty Disability Benefit" and a "Child's Disability Benefit." It will be noted that in providing for a "Duty Disability Benefit" this section states that any such employee shall "also" have a right to receive a "Child's Disability Benefit." It is obvious that by providing for a "Child's Disability Benefit" in addition to a "Duty Disability Benefit" the legislature intended that employees with eligible dependent children should receive larger benefits than employees without eligible dependent children. Sec. 57½ affects only the salary basis for computing "Duty Disability Benefits" and does not purport to alter any of the provisions regarding "Child's Disability Benefit"; nor does this section mention the percentages of salary to be applied in arriving at the amount of the employee's benefit. We are of the opinion that the provisions for a "Child's Disability Benefit" were not in any way affected by the act of October 4, 1932. In fact, "Duty Disability Benefit" and "Child's Disability Benefit" are only two of the many different kinds of payment provided for by the act. Sec. 57½ merely establishes a pegged instead of a fluctuating salary basis for computing compensation annuity payments and "Duty Disability Benefit" only. No other classes of payments are mentioned therein. As we have seen, the legislature amended sec. 46 in 1935. At that time the members of the General Assembly knew of the existence of sec. 57½. Had they wished to provide for

a different basis of paying "Duty Disability Benefit" and "Child's Disability Benefit" they would in all probability have done so at that time. Sec. 57½ is not and could not be an amendment to sec. 46. Sec. 13 of art. 4 of our Illinois Constitution provides that when it is sought to amend, the section amended shall be inserted at length in the new act. The legislature did not set a maximum ratio of benefits to present salaries. The effect of the ruling of the Board and of the trial court is to virtually wipe out a "Child's Disability Benefit" to employees with eligible dependent children whenever a reduction in salary amounted to 16⅔ per cent or more.

Respondent urges that while the instant proceeding appears on its face to be *certiorari* to review the action of the Board taken on May 17, 1940, it is in reality an attempt to have the court review the action of the Board taken in March 1935, reducing plaintiff's "Duty Disability Benefit" payments. Respondent suggests that proceedings to review the order of the Board entered in March 1935 should have been filed within a reasonable time after the entry of such order, that more than five years elapsed before the petition for *certiorari* was filed, and that the procedure followed by plaintiff of filing his claim in February 1940 for the purpose of procuring a review of the order of the Board entered in March 1935, amounts to a circumvention of the law and should not be permitted. Under the heading of Points and Authorities, respondent does not mention the proposition of *laches*. We have carefully read the record and do not find that the respondent at any time raised the point that the complaint for a writ of *certiorari* was not filed in due time. It is a well-established rule that a point not raised in the trial court cannot be urged in this court.

Because of the views expressed, the judgment order of the superior court of Cook county is reversed and the return to the writ of certiorari is quashed.

*Judgment order reversed and return to writ of certiorari quashed.*

HEBEL and DENIS E. SULLIVAN, JJ., concur.