Dom *v.* State Employes' Retirement Board, Appellant.

Demming *v.* State Employes' Retirement Board, Appellant.

Argued October 7, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*George J. Barco,* Deputy Attorney General, with him *H. J. Woodward,* Deputy Attorney General, and *Claude T. Reno,* Attorney General, for appellant.

*Samuel Wilson,* with him *R. A. Sheetz,* for appellees.

OPINION BY MR. JUSTICE LINN, November 23, 1942:

The Commonwealth appeals from orders in mandamus directing payment of sums claimed by the appellees under provisions of the Act of June 27, 1923, P. L. 858, "Establishing a State employes' retirement system," etc.

The suit at No. 6 is by the widow of William T. Dom, who died February 8, 1936, a Judge of the Court of Common Pleas of Westmoreland County. She claimed as beneficiary under a retirement application executed by him pursuant to section 13, par. 1, of the Act. She has since died and has been succeeded on the record by her representative. No. 7 is by Sophia P. Demming, claiming as widow and beneficiary of Benjamin W. Demming, Executive Secretary of the Department of Military Affairs, who died November 21, 1932.

The cases were argued together and depend on the same section of the act. The parties differ about the construction of section 13, par. 1, of the Act of 1923, supra, particularly the words now printed in italics: "Any contributor who has reached the superannuation retirement age *may retire* for superannuation *by filing with the retirement board a written statement, duly attested, setting forth at what time, subsequent to the execution of said application, he or she desires to be retired. Said application shall retire said contributor at the time so specified,* or, in the discretion of the retirement board, at the end of the year in which the time so specified occurs."[1]

Judge Dom and Mr. Demming had reached the superannuation retirement age; their right to retire was therefore conceded. The point for discussion is whether the steps toward retirement taken by them sufficiently complied with the then terms of section 13 or whether essentials were lacking which required the Commonwealth to reject the claims. The learned court held with the plaintiffs.

Judge Dom, on Friday, February 7, 1936, executed a written statement,[2] stating in the present tense, his

---

[1] Since these cases arose this section has been amended by the Act of May 18, 1937, P. L. 683, section 7, 71 PS section 1743; it now reads as follows: "Any contributor who has reached the superannuation retirement age may retire for superannuation by filing with the retirement board a written statement, duly attested, setting forth on what date he or she desires to be retired. Said application shall make the superannuation allowance effective on the date so specified if such application was filed in the offices of the board, or deposited in the United States mail, addressed to the board, before the date specified in the application and before the death of the contributor: Provided, however, That the date so specified in the application shall not be more than thirty days from the date of filing or depositing the application in the mail."

[2] The statement consisted of a form, apparently prepared and issued by or on behalf of the Retirement Board, containing blank spaces intended to be available for the choice of any one of the four options; a part may be quoted:

desire to retire and an election of the second option granted by section 14. He did not fill in the blank left after the words "Date when applicant desires retirement to begin," presumably because he elected to retire immediately and not at some time in the future. The statement was completed on Saturday, February 8th, by Mrs. Dom, who then made the affidavit required of the beneficiary. Judge Dom delivered it to his physician, Dr. McMurray, with instructions to mail it to the Retirement Board. Dr. McMurray mailed it on the 8th and it was received by the Board on Monday morning, February 10th, about nine o'clock. Judge Dom died suddenly on Saturday afternoon, after the retirement statement had been mailed. The Commonwealth contends (1) that Judge Dom did not specify the date on which he desired to be retired in the future and that the omission rendered his retirement inoperative; (2) that his retirement was not complete because (a) the statement was not received by the Board prior to his death and (b) because he had not resigned his office.

In Mrs. Demming's case, it appeared that Demming, on November 7, 1932, executed a statement of his retirement on a form like that employed by Judge Dom; he designated his wife beneficiary, and delivered the paper to his superior officer, Adjutant General Davis, for delivery to the Retirement Board. Mr. Demming died November 21, 1932. General Davis did not deliver the statement to the Board promptly; an entry on its records states, "Because of the lack of knowledge as

---

"I desire to retire under the provisions of Section 6 and 14, and elect Option 2.

Department in which employed at present: Judiciary, State.

Name of position: Judge Common Pleas Court, Westmoreland County.

Date of Birth: July 10, 1873.

Date when applicant desires retirement to begin:

Name of beneficiary: Lela Hudson Dom.

Address:

Date of birth of beneficiary: February 20, 1877.

Signature of applicant: William T. Dom.          Date:

Address:                        ."

to the requirements of this board and the provisions of the Retirement Act, [he] did not submit the application until after the death of Mr. Demming." He delivered the statement to Deputy Attorney General Bender who delivered it to the Board on December 23, 1932. In Mr. Demming's statement, as in Judge Dom's, the space opposite the words "Date when applicant desires retirement to begin" was left blank.

The two cases are therefore alike in (1) that a blank space was left in the retirement-statement-form after the words "Date when applicant desires retirement to begin"; (2) the application did not reach the Board until after the member's death; and (3) no prior resignation was delivered and accepted. Mr. Demming had been in the employ of the Commonwealth for about 38 years and had to his credit with the Retirement Board the sum of $3,072.89. The Board approved his application March 28, 1933. Payments were made to Mrs. Demming on her husband's account for the period from November 10th to November 21st, the date of his death, and to her, as beneficiary designated by him under option 3, as from November 21, 1932, the date of death, until July 31, 1935. On November 23, 1937, the Board notified Mrs. Demming that " . . . the annuity of the late Benjamin Demming is revoked." That notice was accompanied by a check for $55.17, an amount representing the balance of Mr. Demming's retirement fund credit at the time of his death, less the annuity payments which had been made to her. She declined to accept the check on that condition and brought this suit.

The State Employes' Retirement System, established by the legislation, created a contract between the Commonwealth and all its officers and employes, members of the Retirement System: cf. *Retirement Board of Allegheny County v. McGovern*, 316 Pa. 161, 174 A. 400; *Commonwealth of Pennsylvania, State Employes' Retirement System v. Dauphin County*, 335 Pa. 177, 6 A.2d 870. Section 3 of the Act of 1923, supra, pro-

vides for a State Retirement Association. Beginning with section 4, the legislature provided for a Retirement Board and specified its powers and duties, inter alia, the powers and privileges of a corporation. (Section 5, Act of 1923, P. L. 863.) Section 13 deals with superannuation retirement and section 14 authorizes a qualified member to elect which of four specified options he chooses for the purpose of receiving the retirement allowance which the Commonwealth had agreed to pay.

What was meant by what the legislature said?. We are not construing a statute providing for pensions or other gratuities but an act, as appears in the title, "establishing certain funds from contributions by the Commonwealth and contributing State employes, defining the uses and purposes thereof and the manner of payments therefrom, and providing for the guaranty by the Commonwealth of certain of said funds . . ."[3] Employment contracts containing provisions for retirement pay are liberally construed to effectuate the declared intention of the parties to pay additional compensation for services rendered in the past.[4]

By section 13 it was agreed that a member of the Retirement Association, having reached the specified age should have the right to retire and that all he need

---

[3] With respect to retirement acts, we said in *Busser v. Snyder*, 282 Pa. 440, at 454, 128 A. 80, 85: "With relation to the retirement acts, . . . the basis on which these acts are founded is neither charitable nor benevolent; they are founded on faithful, valuable services actually rendered to the Commonwealth over a long period of years, under a system of classification which the legislature has considered reasonable. These appropriations are for delayed compensation for these years of continued service actually given in the performance of public duties in their respective capacities, with the quality of right and obligation in its concept."

[4] See *Klench v. Board of Pension Fund Com'r.*, 79 Cal. App. 171, 249 Pac. 46 (1926); *Oliver v. Retirement Bd. of Municipal Employes*, 311 Ill. App. 38, 35 N. E.2d 405 (1941); *Psutka v. Michigan Alkili Co.*, 274 Mich. 318, 264 N. W. 385 (1936); *State ex rel Gorczyca v. City of Minneapolis*, 174 Minn. 594, 219 N. W. 924 (1928); *Schofield v. Zion's Co-op Mercantile Institution*, 85 Utah 281, 39 P.2d 342 (1934).

do to accomplish it was to file a written statement specifying the time of retirement. Judge Dom and Mr. Demming executed such statements and promptly started them toward the Board. They were not ineffective because a blank was left after the line, "Date when applicant desires retirement to begin." Their exercise of their respective rights was complete. Each had expressed at the beginning of the statement his election to retire, one choosing option No. 2, and one, option No. 3. Each, by the words used, indicated a completed present retirement; if either had desired future retirement it would have been necessary to specify the date in the future when he desired his retirement to become effective. As the statute specified that "said application shall retire said contributor at the time so specified," the statement retired the member as of the date on which the statement was executed, if the Board subsequently found the member qualified for retirement. The words "subsequent to the execution of said application," in section 13, prevent attempts at retroactive retirement. We must therefore reject the argument that the application was ineffective because a blank was left after the line "Date when applicant desires retirement to begin."

The contract vested in the member something more than the mere right to retire; the member also had the right to consider and elect from the options offered by section 14, which provides, inter alia, how the retirement allowance shall be paid and to whom and in what proportions. Retirement allowance is defined in section 1. Section 1, paragraphs 20, 21 and 22, are as follows: "20. 'State Annuity' shall mean payments for life, derived from contributions made by the Commonwealth of Pennsylvania as provided in this act.

"21. 'Member's Annuity' shall mean payments for life, derived from contributions made by the contributor as provided in this act.

"22. 'Retirement Allowance' shall mean the State annuity plus the member's annuity."

Each of these members, in exercising his rights, selected an option and designated his wife as beneficiary to receive part of the allowance after his death. The written statement required by section 13, paragraph 1, therefore, fulfilled two purposes: (1) evidenced the exercise of the right to retire which, as a completed act in these two cases, became effective at once; and (2) vested the designated beneficiary with the rights given the beneficiary by the statute. It was of course necessary that the statement be filed with the Board as notice to, or demand on, the Commonwealth to perform its part of the contract and to enable the Board to determine administratively, for example, that the person proposing to retire was in fact a member and had reached the superannuation age, the amount of the retirement allowance and the amount distributable and the like. Until the statement reached the Board, the Commonwealth was not called on to pay. For such purposes, the application had to reach the Board, but the act does not provide that it must reach the Board prior to the member's death. Retirement statements must, of course, be made in good faith and the court here found that both members acted in good faith. It would be an unreasonable construction of the contract and one out of harmony with the general rule stated above, applied in construing such contracts, to hold that the death of a member after he retired should deprive the beneficiary of the benefit of an already vested right to share in the retirement allowance. While a subsequent amendment may not in all cases be referred to for the purpose of construing a statute, in dealing with the contract before us, it may be noticed that in the Act of 1937, supra, amending section 13, supra, the legislature provided that if the application was mailed before the date specified for retirement and prior to the death of the contributor, it should be effective if the retirement date was not more than 30 days from the date of filing or mailing. Even under this amendment, if a retiring

member died between the time his retirement statement was mailed and the time it arrived, the beneficiary would be entitled to take.

As to the argument made by the Commonwealth concerning Judge Dom's resignation dated February 7, it is sufficient to say that it is immaterial whether he had sent a resignation which had not been acted upon at the time of his death; it is immaterial because section 13 specifically provided that the "application shall retire said contributor at the time so specified . . ."; an accepted resignation could not have more effectively taken him out of service.

Something was said in the argument that unless the blank opposite the date when retirement shall become effective was filled in, the Retirement Board might not know what to do with it. The Demming record shows the contrary. The Retirement Board understood from the Demming statement[5] that the retirement was presently effective, because on April 5, 1933, the Board wrote to Mrs. Demming that the "application is effective" and that a "check will be issued for the period November 10, 1932, to November 21, 1932, the date Mr. Demming died" and at the same time that checks would thereafter be issued to her as beneficiary.

Orders affirmed.

---

[5] "I desire to retire under the provisions of Sections 6 and 14 and elect Option 3.

Department in which employed at present: Military Affairs.

Name of Position: Executive Secretary.

Date of Birth: June 18th, 1869.

Date when applicant desires retirement to begin . . . . . . . . . . . . . .

Name of beneficiary: Sophia P. Demming (wife).

Address: 1518 State Street, Harrisburg, Pa.

Date of birth of beneficiary: February 5th, 1880.

Signature of applicant: Benjamin W. Demming.

Date . . . . . . . . . . . . . . . . . .

Address: 1518 State Street, Harrisburg, Pa."