## McGinnes v. O'Hara

*Weiss & Rhoads*, for petitioner.

*W. J. Woodward* and *James H. Duff*, for respondent.

WOODSIDE, J., November 1, 1943.—This comes before us on a motion to quash an alternative writ of mandamus. The writ was issued upon petition of the widow of Percy R. McGinnes, who is seeking to recover $2,-816.16, which she alleges is due from the State Employes' Retirement Board.

Percy R. McGinnes was an employe of the Commonwealth of Pennsylvania, and a member of, and contributor to, the State Employes' Retirement System for some years prior to August 4, 1936, on which date he retired upon disability from said employment and was granted a disability retirement allowance of $117.50 per month.

The accumulated deductions [1] from his salary were $4,167.41.

The State Employes' Retirement Act of June 27, 1923, P. L. 858, was amended by the Act of May 18, 1937, P. L. 683, 71 PS §1742, by adding to section 12(5)*b* the following:

"Should a disability annuitant die before the total allowance received for disability shall be at least equal to the amount of his or her accumulated deductions at the time of disability retirement, then the board shall pay to the named beneficiary or to the annuitant's estate an amount equal to the difference between the allowance received and the annuitant's accumulated deductions . . ."

On July 18, 1937, two months after the aforesaid provision became law, McGinnes died. The total allowance received by him to the date of his death was $1,-351.25. The widow, whom decedent had named as his beneficiary, obtained the writ to compel payment to be made by the State Employes' Retirement Board, the State Treasurer, and Auditor General, of the difference between the accumulated deductions and the total allowance received by McGinnes during his lifetime, which payment she claims she is entitled to under the act amended as aforesaid.

---

[1] "Accumulated deductions" means the total of the amounts deducted from the salary of contributor and paid into the fund to the credit of the annuity savings account, together with interest thereon at four percent per annum compounded annually: Section 1 of State Employes' Retirement Act of 1923, as amended.

Thirteen reasons why the writ should be quashed were filed by the board. Some of the objections have been removed by the filing of an amended petition by plaintiff.

The main question for us to determine now is whether the aforesaid amendment applies to a person granted a disability retirement allowance prior to its passage and who, without returning to State employment, died subsequent to its passage, or whether the amendment refers only to those parties who are granted a disability retirement subsequent to the effective date of the amendment.

We believe it was the intent of the legislature to have this amendment apply to cases where a party had already been granted a disability retirement and it was not unconstitutional for it to do so.

In the first place, the language of the amendment indicates that it refers to all disability annuitants, whether they became such before or after the passage of the act.

A "disability annuitant" is not defined specifically by the act but it must relate to one who is under "disability retirement", which the act (sec. 1, par. 14) says is "retirement as defined in section 12 of this Act".

McGinnes had been retired upon disability and was therefore a "disability annuitant" when he died. The provision in the law that says "Should a disability annuitant die" would clearly apply to him. Furthermore, he died before the total allowance received for disability equaled the amount of his accumulated deductions at the time of disability retirement. The case before us fits precisely into the wording of the act as amended. We can find nothing in the amendment which indicates any intention on the part of the legislature to limit its application to employes who retire after its effective date.

If the legislature had intended the amendment to apply only to those who retire subsequent to its pas-

sage, it could easily have said: "Should a person, who hereafter becomes a disability annuitant, die before the total allowance, etc." To accept the Commonwealth's contention would be to write into the amendment the words quoted above. This we have no right to do.

In the second place, we think there was sound reason for the legislature to change the law and to make it applicable to cases already on disability annuity. The purpose of the Retirement Act is "to obtain efficient public servants by making them happier, more secure and satisfied": Commonwealth, etc., v. Dauphin County, 335 Pa. 177, 184, 46 Dauph. 175 (1938); Johnston v. State Employes' Retirement Board, 39 Dauph. 231, 242 (1934); Demming v. State Employes' Retirement Board, 345 Pa. 489 (1942), 52 Dauph. 378, 380. To carry out this purpose the act should operate equitably as to all the members of the retirement system, but there was at least one class of cases in which it did not do so.

Prior to 1937 an employe might pay into the fund for many years, become physically incapacitated before reaching superannuation retirement age, be retired upon his application, or even upon the application of the head of his department, on what is known as a disability allowance; and die shortly thereafter, having received only a very small part of the sum which he paid into the fund. Neither his beneficiary nor his estate would have had claim to the money which he had been saving for years by deductions from his salary for his own and probably his wife's old age. This, although occurring in comparatively few cases, created a situation which was anything but beneficial to the unfortunate employe who became physically incapacitated.

It is reasonable to assume that the legislature considered the situation of a disability annuitant inequi-

table and that in correcting it they intended to have the amended law relate to those already on disability, as indeed their language indicates.

In interpreting the act we should remember that this court and the Supreme Court have on various occasions reviewed the purpose of the Retirement Act and have concluded that it should be liberally construed: Commonwealth, etc., v. Dauphin County, supra; Johnston v. State Employes' Retirement Board, supra; Demming v. State Employes' Retirement Board, supra.

The Retirement Board contends that our interpretation causes the amendment to operate retroactively, but it relates only to annuitants who die after its effective date, and thus operates prospectively. It cannot be considered retroactive because it relates to disability annuitants who were such at the time of its passage any more than it could be considered so because it relates to people who were or had been employes at the time it was passed. At the time of its passage the provisions did not relate to any case but it did apply to all cases where *thereafter* a disability annuitant died.

It is suggested that to allow this claim would not be fair to other members of the system. If the sum which they, or any of them, would receive might vary as a result of this interpretation, this might be a matter for consideration, probably after the taking of testimony to show wherein it would vary. But as we read the act the amount which any who have.retired, or who hereafter retire, receive would be in no way reduced by this payment. McGinnes himself received no more from the fund than he would have received had the act been amended prior to his retirement, for the amendment to section 12 does not change the amount which a disability annuitant receives in monthly payments. Neither does the amendment affect a superannuation retirement. Thus there seems to be no very

good reason why as a matter of equity the legislature should not make the amendment effective as to all who die after the passage of the amendment rather than only as to employes who retire on disability subsequent to the amendment.

The board contends "the disability retirement allowance granted to the annuitant cannot be changed in any manner whatever" because section 9 provides that an annuity "shall not be increased, decreased, revoked or repealed except as otherwise provided in this Act". This is a provision made by the 1935 legislature and if the legislature in 1937 or any other time sees fit to provide otherwise it can do so. By the amendment the legislature saw fit to "otherwise provide".

It is further argued that to interpret the act as we have here done would make the amendment unconstitutional because it would be impairing the obligation of a contract in violation of article I, sec. 17, of the Constitution.

Assuming the relationship between the recipient and the State to be contractual, it is no impairment thereof for the Commonwealth by an amendment passed by the legislature and approved by the Governor to provide for the repayment to an employe of the sum he paid to the Commonwealth for his retirement.

"The lexical definition of 'impair' is 'to make worse; to diminish in quantity, value, excellence, or strength; to lessen in power; to weaken; to enfeeble; to deteriorate": Edwards v. Kearzey, 96 U. S. 595, 600.

As far as McGinnes and his beneficiary are concerned, there is, of course, no impairment. If the legislature voluntarily increases its obligation by providing for the repayment to one of its former employes of a sum which the Commonwealth collected from him by deductions from his salary, it does not violate the Constitution.

The board argues that the petition fails sufficiently to set forth that any reserves were set up for the

payment of this sum. In the final analysis it is the court, and neither the board nor its actuary, who must determine what the law is. If we were to decide the validity on the basis of the board's bookkeeping, the interpretation of the law would be in the hands of administrative authorities who were not intended by the legislature or the Constitution to have such power. This position of the board is fundamentally unsound.

The board further contends that the petition fails to set forth the availability of any appropriation for the payment of the claim alleged by petitioner. It says that article III, sec. 16, of the Constitution requires an appropriation before any money shall be paid out.

An appropriation was made by the legislature in 1937, as follows:

"For the payment into the State Employes' Retirement Fund, to the credit of the State Annuity Reserve Account Number Two, the sum of three hundred ninety-seven thousand nine hundred dollars ($397,900).

"For the payment into the State Employes' Retirement Fund, to the credit of the Contingent Reserve Account, the sum of two hundred ninety-eight thousand nine hundred fifty dollars ($298,950": Appropriation Act of July 2, 1937, Appropriation Acts 1937, p. 76.

The Governor approved the above appropriation except as follows:

"The item which provides as follows:

'For the payment into the State Employes' Retirement Fund, to the credit of the Contingent Reserve Account, the sum of two hundred ninety-eight thousand nine hundred fifty dollars ($298,950).'

"I approve this item in the amount of one hundred ninety-eight thousand nine hundred fifty dollars ($198,950)." See Appropriation Acts of 1937, p. 110.

Similar appropriations in varying amounts were made to the board at each regular session thereafter. It would be a difficult burden to put upon all claimants

under the State Employes' Retirement Act of 1937 to prove that the actuary recommended the correct amount each biennium and that the appropriations made were in the correct amount.

Furthermore, the amendment merely provided for the repayment of moneys which were paid into the fund by the employe. These funds, under the provisions of paragraph 6, sec. 8, of the Act, 71 PS §1738, are kept in a separate account known as the member's annuity savings account.

Paragraph 7 of the same section provides as follows:

"Upon the retirement of a contributor a credit equivalent to the amount of his or her accumulated deductions shall be transferred from the members' annuity savings account to a ledger account to be known as the members' annuity reserve account. His or her members' annuity shall be charged to said member's annuity reserve account, and paid from the fund created by this act. Should said contributor be subsequently restored to active service, his or her members' annuity reserve shall thereupon be transferred from the members' reserve account to the members' annuity savings account."

Careful consideration has been given to the question of laches in this case. The disability annuitant died July 18, 1937. The alternative writ of mandamus was issued October 26, 1942. The amended petition for the writ shows that on July 22, 1937, negotiations began between the beneficiary and the State Employes' Retirement Board. On November 22, 1937, the board, upon an opinion by the Attorney General, refused to allow the claim, but in February 1938 the matter was reopened and it was not until January 13, 1942, that the State Employes' Retirement Board finally advised the beneficiary that payment would not be made to her.

The Commonwealth is not liable for interest and is not prejudiced in this respect by any delay. Although

the statute of limitations does not apply here, it is sometimes used as a measuring stick, and the action here was brought within the time allowed had it been an assumpsit action. See 14 Vale Pa. Digest 715, and cases therein cited. Although it is evident that petitioner might have acted more promptly, under the circumstances of this case we do not feel that she has been guilty of laches.

In the petition the beneficiary asked for interest but admits in her brief that she is not entitled thereto.

The contentions of the Commonwealth that mandamus is not the proper remedy and that this action cannot be maintained because it is an attempt to sue the Commonwealth, without its consent, are not well founded and merit no further comment.

And now, to wit, November 1, 1943, the motion to quash the alternative writ of mandamus is dismissed and defendant is given leave to file an answer on the merits within 20 days from the date of service of this order. The prothonotary is directed to notify forthwith the parties or their counsel of this order.