## Firemen's Pension Fund, etc., v.
## Minnaugh, etc., et al.

*George I. Puhak* and *George L. Reed*, for plaintiffs.

*John McI. Smith*, for intervening defendant.

*James S. Bowman* and *Spencer G. Hall*, for defendant.

NEELY, J., December 17, 1951.—Plaintiff, Firemen's Pension Fund, by Simon D. Smith and Elmer W. Shover, trustees ad litem, instituted this action in mandamus against Joseph A. Minnaugh as City Treasure of Harrisburg, whereby they seek to compel defendant to pay over to the fund the sum of $10,832.84. The complaint pleads, inter alia, that plaintiff is an

unincorporated association composed of paid employes of the Bureau of Fire of the City of Harrisburg, established and now existing by virtue of City Ordinance No. 171, file folio 268,* enacted on December 23, 1947, and effective January 1, 1948; that on or about October 28, 1948, defendant received from the Auditor General of Pennsylvania the sum of $21,665.68; that this sum represented the amount paid to the City of Harrisburg by the State Treasurer from the two per cent tax on premiums received by foreign fire insurance companies from business written in the City of Harrisburg during the year 1946, collected by the State under the Act of June 1, 1889, P. L. 420, 72 PS §2261, and allocated to the city in accordance with the provisions of section 2 of the Act of June 28, 1895, P. L. 408, as amended by the Act of July 5, 1947, P. L. 1240, 72 PS §2262; that one half of this amount is payable by the city treasurer to the duly constituted relief association, and the other half, amounting to $10,832.84, remaining in the hands of the city treasurer is payable to plaintiff, Firemen's Pension Fund; that defendant has failed to pay over this amount to plaintiff herein; and that defendant has refused and still refuses plaintiff's demand for the payment of the said sum. The Harrisburg Firemen's Relief Association of the State of Pennsylvania, the duly recognized relief association of volunteer firemen in the City of Harrisburg, was permitted to intervene as a party defendant.

Defendant and intervening defendant have each filed preliminary objections. Their objections, although in somewhat different phraseology, raise substantially the same questions and will be considered together. Their preliminary objections are (a) that the Firemen's Pension Fund lacks legal capacity to bring mandamus against the City Treasurer of Harrisburg;

---

* The ordinance is incorporated in the complaint by reference.

(b) that the Firemen's Pension Fund by these trustees ad litem are not the proper parties to institute suit.

It should be pointed out that these plaintiffs originally brought their action against Joseph A. Minnaugh, individually, and these preliminary objections were filed to the complaint in the action as originally instituted. However, pursuant to this court's order of May 15, 1951, plaintiffs amended the caption of the case bringing in defendant in his official capacity as Treasurer of the City of Harrisburg. Thereafter, defendant again filed preliminary objections to the complaint as amended, and intervening defendant filed a paper styled "renewal of preliminary objections heretofore filed." We consider the preliminary objections to the amended complaint properly before the court for disposition.

Section 2 of the Act of 1895, as last amended prior to 1947 by the Act of April 30, 1935, P. L. 122, provided that municipalities receiving the two per cent tax allocations from the State Treasurer thereunder should forthwith transmit the sum received to the relief fund association of the fire department of the municipality. And prior amendments of April 25, 1929, P. L. 709, and April 20, 1933, P. L. 51, therein contained the provision that the allocations were to be paid forthwith to the relief fund association. Neither the Act of 1895 nor the amendments of April 20, 1905, P. L. 229, and July 15, 1919, P. L. 964, contained any direction as to the payment of the allocated sums to a relief association.

However, the amendment of July 5, 1947, P. L. 1240, 72 PS §2262, made a radical departure from the provisions of previous statutes with respect to the disposition by the municipalities of the two per cent tax allocations and reads in part:

"On and after the first day of January, one thousand nine hundred and nineteen, and annually thereafter,

there shall be paid by the State Treasurer to the treasurers of the several cities, . . . within the Commonwealth, the entire net amount received from the two per centum tax paid upon premiums by foreign fire insurance companies. . . . Each city, . . . receiving any payment from the State Treasurer hereunder, shall forthwith pay the amount received to the relief fund association of, or the pension fund covering the employes of the fire department, or of such fire company, or fire companies, paid or volunteer, now existing, or hereafter organized, in such city, . . . as is or are engaged in the service of such city, . . . and duly recognized as such by the council . . . of such city. . . . Provided, that if the fire department consists of paid and volunteer firemen and the paid firemen shall be covered by a pension fund, then the two per centum tax aforesaid shall be divided equally between the relief fund association of the volunteer firemen and the pension fund for the paid firemen."

It is to be observed that the Act of May 26, 1949, P. L. 1825, reënacts the provisions of the foregoing amendment of 1947. Thus it can be seen that while from 1927 to 1947 the relief fund association of fire companies in the municipalities received the entire amount allocated, nevertheless the Act of 1947, as reenacted in 1949, provides that allocations are to be divided equally between the relief fund association and the firemen's pension fund composed of "paid firemen."

The Firemen's Pension Fund was created by ordinance enacted pursuant to the mandatory provisions of the Third Class City Law of June 23, 1931, P. L. 932, as amended by the Act of June 28, 1947, P. L. 1032. Section 4320 of that act, as amended in 1947 (53 PS §12198-4320), provides:

"Except as hereinafter provided, cities shall provide annuity contracts or establish, by ordinance, a fire-

men's pension fund, to be maintained in part by an equal and proportionate monthly charge against each member of the fire department, which shall not exceed annually three per centum of the pay of such member; . . .

"All pension funds established under the provisions of this section shall be under the direction and control of a board of managers consisting of the mayor, the director of accounts and finance, the director of the department having charge of the fire department, or in cities where the mayor is also the director of the department having charge, of the fire department, then the director of public safety, the city controller and the chief of the bureau of fire, ex officio, and two members of the fire department to be chosen by the members of the fire department. . . . The fund shall be applied, under such regulations as the board of managers shall prescribe. . . ."

Defendant and intervening defendant by their preliminary objections maintain that the Firemen's Pension Fund lacks capacity to institute this suit by these trustees ad litem, for the reason that it is an administrative agency of the City of Harrisburg and therefore cannot sue the city treasurer. It is also contended that even though Firemen's Pension Fund has legal capacity to sue, nevertheless the action has not been instituted by the proper parties plaintiff since, it is claimed, the fund is not an unincorporated association and hence action cannot be instituted by plaintiffs as trustees ad litem.

Pa. R. C. P. 2151 provides:

" 'association' means an unincorporated association conducting any business or engaging in any activity of any nature whether for profit or otherwise under a common name, but does not mean an incorporated association, general partnership, limited partnership,

registered partnership, partnership association, joint stock company or similar association."

And Pa. R. C. P. 2152 states that:

"An action prosecuted by an association shall be prosecuted in the name of a member or members thereof as trustees ad litem for such association."

We think at common law the term "unincorporated association" connotes some voluntary association of individuals, and is used to designate an organization set up under a voluntary agreement. In 4 Am. Jur., page 459, it is said:

"An association is generally formed by the voluntary action of a number of individuals in associating themselves together under a common name for the accomplishment of some lawful purpose; its organization does not usually, as in the case of corporations, depend upon compliance with any statutory provisions, although, as shown, such organizations are subject to legislative control. The contract of association is usually embodied in an instrument corresponding to the corporate charter or articles of incorporation, known as the constitution or articles of association, which, with the by-laws adopted by the organization, governs the powers, rights, duties, and liabilities of the members and the society."

See also 7 C. J. S., page 25, wherein it is said:

". . . They [unincorporated associations in general] are generally formed by the voluntary association of individuals under the common-law right of contract." (Brackets supplied.)

In 13 Standard Pa. Practice 72, it is stated:

"The word 'association' is one of vague meaning, used to indicate a collection of persons who have joined together for a certain object."

See Spotz's Estate, 51 D. & C. 427, 438 (1944). The term "association" or "unincorporated association" contains the concept of an association activated volun-

tarily by agreement, joining the members thereof together to form an organization for some specified purpose.

The element of voluntary association is lacking in the Firemen's Pension Fund. This fund was established by legislative mandate. Membership in the fund is involuntary and contributions thereto are made mandatory upon the paid members of the fire department. The members who contribute to this fund do so not by virtue of any agreement among themselves, but because of the provisions of the Third Class City Law and the city ordinance enacted pursuant thereto. The common-law concept of a voluntary association of these members is entirely lacking in the membership in this fund.

The ordinance implementing the act of assembly instituted a retirement system in the City of Harrisburg for paid firemen. Notwithstanding the fact that the nomenclature used in the statute and the ordinance refers to pensions, we believe that in effect these legislative enactments made provision for retirement pay by way of adjusted compensation for past services by these employes. What was said by Judge Cunningham in Kelly v. Loveland et al., 141 Pa. Superior Ct. 455, 463 (1940), in interpreting the Act of April 13, 1927, P. L. 196, 53 PS §12198-4340, has equal application to the Third Class City Law of 1947. The court said:

"This ordinance, in spite of the use of the misleading term 'pension' throughout its provisions, in legal contemplation creates what might more accurately be denominated a retirement fund. The 'pension' payable to eligible employees is not a mere gratuity or bounty, but is earned compensation arising out of a contract right."

In Retirement Board of Allegheny County v. McGovern et al., Commissioners, 316 Pa. 161, 169 (1934), the Supreme Court held that the Act of May 2, 1929,

P. L. 1278, amending previous acts, established a retirement system and made provisions for retirement pay, regardless of the fact that the statute designated the fund in question as a pension fund and the sum payable to the employe upon retirement as a pension. The court said:

". . . Pensions should not be confused with retired pay. A pension is a bounty or a gratuity given for services that were rendered in the past. This act provides for retirement pay. Retirement pay is defined as 'adjusted compensation' presently earned, which, with contributions from employees, is payable in the future. The compensation is earned in the present, payable in the future to an employee, provided he possesses the qualifications required by the act, and complies with the terms, conditions, and regulations imposed on the receipt of retirement pay. Until an employee has earned his retirement pay, or until the time arrives when he may retire, his retirement pay is but an inchoate right; but when the conditions are satisfied, at that time retirement pay becomes a vested right of which the person entitled thereto cannot be deprived: it has ripened into a full contractual obligation."

See also McBride v. Allegheny County Retirement Board et al., 330 Pa. 402, 405 (1938) ; Bausewine v. Philadelphia Police Pension Fund Association, 337 Pa. 267, 270 (1939) ; Wiley v. Umbel et al., 355 Pa. 206, 209 (1946) ; Dom v. State Employes' Retirement Board, 345 Pa. 489, 494 (1942).

In setting up the Firemen's Pension Fund, the city established a retirement system for paid firemen for the purpose not only of insuring the efficiency of city employes, but also to provide some competence for those employes who have faithfully served the city until old age. The performance of the city's obligation to compensate and protect its employes is a governmental function, and the establishment of the retirement

system by the city is a governmental undertaking: Commonwealth of Pennsylvania, State Employes' Retirement System v. Dauphin County et al., 335 Pa. 177, 184 (1939).

In Bausewine v. Philadelphia Police Pension Fund Association, supra, it was recognized that the Philadelphia Police Fund Association, Incorporated, is an agency of the municipal government of Philadelphia for the distribution of funds appropriated for retirement pay. Thus at page 269 the Supreme Court said:

"It was recognized in Commonwealth ex rel. v. Walton, 182 Pa. 373, that the Philadelphia Police Pension Fund Association is an agency of the municipal government for the distribution of funds appropriated for the retirement pay of members of the police department of the city."

In Abrahams, Admx., v. Wilson, Mayor et al., 134 Pa. Superior Ct. 297, 300 (1939), the Superior Court adopted the following language of the court below:

". . . the pension board was an administrative agency of the City of Philadelphia, charged with the duty of collecting and distributing the pension fund, and that contributions made thereto by employees, together with the appropriation made by the city council, . . . constituted a single fund impressed with a trust to carry out the specific purposes for which the fund was created; . . ."

The pension board and fund referred to in the Abrahams case were established under circumstances practically identical with those in the instant case, that is the board and fund were there established by statutory mandate and the board was charged with the duty of preserving and maintaining the fund. See Act of April 28, 1915, P. L. 197, as amended, 53 PS §3511 et seq.

In our judgment, the Firemen's Pension Fund, created by ordinance, must be considered an agency of the

municipality, with the duty and responsibility of discharging a governmental function, viz., the administration of the retirement system for paid firemen. We do not believe that the Firemen's Pension Fund is an unincorporated association as that term is used in Pa. R. C. P. 2152. Hence, plaintiffs as trustees ad litem would have no right to bring this suit in behalf of the fund, and the preliminary objections must be sustained for that reason alone, without further consideration of the question of the capacity of the agency to sue the city treasurer.

In sustaining these objections, must we give judgment for defendants on these pleadings? To answer this quaere, we must determine whether this complaint is amendable. A defective complaint may be made a good pleading by amendment, and recognition of the right to amend is not a matter of discretion with the court; it is a positive duty if the complaint can be amended to state a good cause of action: Euster v. Standard Accident Insurance Co., 139 Pa. Superior Ct. 6 (1940).

This brings us to a consideration of Pa. R. C. P. 1033, reading as follows:

"A party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, correct the name of a party or amend his pleading."

This rule superseded and restated section 2 of the Act of May 4, 1852, P. L. 574, 12 PS §533. See Pa. R. C. P. 1451, Anderson's Civil Practice, vol. 3, pages 558, 568. We think this procedural rule must be considered in the light of the liberal interpretation that has been placed not only upon the Act of 1852 but on prior statutes of amendment. Section 2 of the Act of 1852 dealt with changing or adding the name or names of any party plaintiff or defendant.

In Leland et al. v. Firemen's Insurance Company of Newark, 127 Pa. Superior Ct. 533, 540 (1937), the Superior Court held:

"These statutes [of amendment] have been liberally construed by the Supreme Court and the right to amend a plaintiff's statement, for informality, where the cause of action is not changed, and to bring in additional parties by amendment, by changing or adding a name wherever a mistake or omission has been made, and the opposite party is not injured thereby, has become the settled practice of the appellate courts." (Brackets supplied.)

And continuing at page 541, the court said:

". . . liberality has been shown in permitting changes and additions in the names of plaintiffs, where there was a mistake or omission in bringing suit, in order that the parties plaintiff might correspond with the contract declared on, and the cause of action was not changed nor the defendant injured thereby."

In Windsor Manufacturing Co. v. Globe & Rutgers Fire Insurance Co., 277 Pa. 374, 381 (1923), the Supreme Court stated:

". . . The contention is made that plaintiff was without insurable interest, since the shipments were f. o. b. Philadelphia. This complaint is without force, in view of the rider attached to the policy by which protection was extended to all interested in the property consigned. If others had any interest, by reason of the passing of title, their names could be added by amendment, and if such property rights appeared, this would be directed here on appeal: . . ."

In Ronca et al. v. British & Foreign Marine Insurance Company, Ltd., 314 Pa. 449, 451 (1934), the Supreme Court said:

". . . The assignor is not a necessary party although undoubtedly an assignee should, as a general proposition, sue in the name of his assignor. This

court has pointed out in many cases, as recently as in Paxos v. Jarka Corp., 314 Pa. 148, that litigation will not be prolonged or confused by insubstantial objections to the form of statement of plaintiffs. The record, if necessary, may be treated as amended in this court: Methodist Episcopal Church of Franklin v. Equitable Surety Co., 269 Pa. 411, 415."

Following are some of the cases in which our courts have permitted amendments: Meason v. Kaine, 67 Pa. 126 (1870) (adding a party); Adams et al. v. Edwards et al., 115 Pa. 211 (1887) (substituting name of principal for that of attorney-in-fact); Clifford, Admr., v. Prudential Ins. Co., 161 Pa. 257 (1894) (amendment by the Supreme Court changing capacity in which plaintiff sued); Hewitt, Receiver, v. Democratic Publishing Co., 271 Pa. 546 (1922) (substituting new legal plaintiff); Power v. Grogan, 232 Pa. 387 (1911) (amendments may be permitted where the proper individual is on the record as plaintiff, but is erroneously designated as to the capacity in which he has a right to sue, particularly when no change in the cause of action is involved); see also Albert v. Home Life Ins. Co., 14 Northumb. 107 (1939); 2 Standard Pa. Practice 384.

The adjudicated cases all suggest that the courts have treated with great liberality the question of the amendment of the name of the party plaintiff where the amendment does not inject a new cause of action, and particularly is this true where the statute of limitations has not run. And in the instant case the statute has not run.

The action of mandamus may be used to compel the performance of a purely ministerial duty: Tanenbaum v. D'Ascenzo et al., 356 Pa. 260, 262 et seq. (1947); Hotel Casey Company v. Ross et al., 343 Pa. 573 (1942); Soble et al. v. Hines, 347 Pa. 536 (1943); Kaufman Construction Company v. Holcomb et al.,

357 Pa. 514, 520 (1947). The action of mandamus in Pennsylvania is governed by the Act of June 8, 1893, P. L. 345, as amended, 12 PS §§1911 et seq., subject to such changes as have been made in procedure by Pa. R. C. P. 1091 through 1098. Section 3 of the Mandamus Act, 12 PS §1913, provides that the writ may issue to a person "beneficially interested", such person being one who has sustained an injury special and peculiar to himself as distinguished from the general public. See Butcher v. Philadelphia Civil Service Commission et al., 163 Pa. Superior Ct. 343 (1948).

These plaintiffs have brought their suit in a representative capacity, viz., as trustees ad litem. We think that if they have a beneficial interest in this fund as contributors thereto, it is such an interest as would entitle them to bring mandamus in their individual capacity to enforce the performance of an official duty on the part of the city treasurer. And we believe they would have the right to amend this complaint to show by the caption and the substance of the complaint that the case is being prosecuted by them individually. In the last analysis, such an amendment would only be changing the capacity in which these plaintiffs would sue, and would not change in any way the essential cause of action.

An assumpsit action was instituted at September term, 1948, no. 672, by these same trustees ad litem to recover the amount of moneys which are claimed here to be due the fund, and at June term, 1949, no. 643, a petition for declaratory judgment was filed by parties beneficially interested in the fund, wherein petitioners sought to have this court declare that the fund is entitled to the moneys in dispute in this case. The court dismissed both of these proceedings by order dated May 15, 1951, to the end that this action in mandamus might be prosecuted. Since we feel that mandamus is the proper form of action, it would defeat the ends of

justice to refuse these parties the right to amend so that this case can be put in such legal position that we may determine these controversial issues on their merits. For all of these reasons, we feel that the right of amendment exists in this case.

And now, December 17, 1951, the preliminary objections of defendant and intervening defendant are herewith sustained. Plaintiffs, however, shall have the right to amend their complaint within 20 days to set forth in the caption and the body of the amended complaint that these plaintiffs are proceeding in their individual capacity as parties beneficially interested.