# Ogden v. Public School Employes' Retirement Board

*Fox, Rothschild, O'Brien & Frankel*, for plaintiffs.

*Harry L. Rossi*, Deputy Attorney General, for Public School Employes' Retirement Board.

HERMAN, J., July 17, 1961.—This is an appeal from an adjudication of the Public School Employes' Retirement Board denying to appellants any of Benjamin V. Ogden's benefits in his superannuation retirement allowance except those which Ogden would have been entitled to receive from July 1, 1958, the effective date of his retirement, to August 19, 1958, the date of his death.

When this matter was originally before us we sent it back to the board so that further proceedings might be had in conformity with the Administrative Agency Law. Thereafter, a hearing was duly held by the board and an adjudication containing findings of fact and conclusions of law was filed. The present appeal was then taken.

Although in the appeal it appears that issue is taken to some findings of fact, actually there is no dispute with the facts but only with the board's conclusions.

The facts are briefly these: Benjamin V. Ogden, who was born on October 13, 1893, had 38 years of credited service in the public schools of the Commonwealth when he quit teaching on June 30, 1958, at the age of 65. At the time of his retirement, he was contributor to the School Employes' Retirement Fund, having contributed regularly throughout his period of employment. On April 28 or 29, 1958, Ogden made application for his superannuation retirement allowance which he requested to begin on July 1, 1958, requesting further that his resignation be effective June 30, 1958. On this application he elected to receive the "maximum annuity," which meant that he was to receive his superannuation retirement allowance throughout his life, but that upon his death payments would cease. The board received the application on May 9, 1958, and it was duly approved on June 19, 1958. At the time of Ogden's retirement it appeared that he had contributed to the School Employes' Retirement Fund the sum of $7,155.37, which had earned $5,411.85 interest, and that the Commonwealth had contributed a sum sufficient to make the value of Ogden's retirement allowance $33,332.41. On August 19, 1958, prior to his receiving any check on account of his retirement allowance, Ogden died and, thereafter, his executors were paid without prejudice, the sum of $659.08, representing two

monthly payments of $329.54 each and being payments for the months of July and August.

Ogden's executors aver that he having died within 90 days of his retirement and before having received any payments, they are entitled to receive the actuarial equivalent of his full superannuation allowance under option 1.

Section 15 of the act which established the retirement system, Act of July 18, 1917, P. L. 1043, as amended (24 PS §2137), provides, in part:

"At or before the time of his or her superannuation retirement, any contributor may elect, by written election duly executed and filed with the retirement board, to receive his or her benefits in a superannuation retirement allowance, payable throughout life; or he or she may, on superannuation retirement, elect to receive the actuarial equivalent at that time of his or her employe's annuity, his or her State annuity, or his or her superannuation retirement allowance, in a lesser employe's annuity, or a lesser State annuity, or a lesser superannuation retirement allowance, payable throughout life, with the provisions that:

"Option 1. If he or she die before he or she has received in payments the present value of his or her employe's annuity, his or her State annuity, or his or her superannuation retirement allowance, as it was at the time of his or her superannuation retirement, the balance shall be paid to his or her legal representatives, or to such person as he or she shall nominate by written designation, duly acknowledged, and filed with the retirement board."

In 1956 there was added section 15.1 (May 18, 1956, P. L. (1955) 1629) (24 PS §2137.1), which provides, in pertinent part:

"Any contributor who is *entitled to retire*,* under

---

* Italics throughout ours.

the provisions of this act, by reason of having completed twenty-five (25) years of total school service or by reason of having become eligible for superannuation retirement and . . . who within ninety (90) days after *the termination of his school service* and prior to the date of his death, had not entered upon withdrawal or superannuation retirement allowance or withdrawn his accumulated deductions, shall be *considered* as having elected to receive the actuarial equivalent of his or her full superannuation allowance under Option 1, as provided in section 15 of this act, as of the date of his or her death . . ."

Appellants contend that having received no payments and having died within 90 days, Ogden had not "entered upon" his superannuation retirement allowance and, therefore, must be considered as having elected option 1 even though he actually elected the maximum allowance.

We cannot agree with appellants' position, for we believe that having made his election he thus effectively rejected any option.

There seems to us to be no conflict between section 15, which sets forth the election that a contributor may *himself* make, and section 15.1 which, in part, makes an election for him when, under certain circumstances, he fails to make his own.

Statutory construction rules should only be resorted to when the intention of the legislature is not clearly expressed in the statute under consideration: Statutory Construction Act of May 28, 1937, P. L. 1019 (46 PS §501 et seq.).

While perhaps the choice of some of the language in section 15.1 was not the best, nevertheless the intention of the legislature is clear. The intention was to *consider* that a contributor had elected option 1 where he had not in fact made any election. The section could

certainly not be construed to mean that when a contributor had deliberately made an election, then, under certain circumstances, it was to be considered that he had *not* made an election, and to make a contrary election for him. This is the tortured construction that appellants suggest.

Section 15.1 is concerned not with a person such as Ogden who had effectively retired, but with a "contributor who *is entitled to retire.*" To entitle is "to qualify one for something; to furnish with proper grounds for seeking or claiming": Webster's New International Dictionary; Black's Law Dictionary. Ogden was not seeking or claiming retirement; he had retired and had made his election of benefits.

We are not impressed by the references to the handbook published by the board, for while the *questions* there propounded refer to the rights of a contributor to change his repayment plan *after he has received one or more payments,* the *answers* suggest that no change may be made after the *application* for retirement allowance has been *approved.* It can make no difference here whether the contributor has received one payment or no payments; he has entered upon his superannuation retirement allowance when he has filed his application and has therein elected the manner in which he shall receive the allowance.

Of course, forfeitures, as suggested by appellants, are not favored in the law, but no forfeiture appears here. What occurred in the Ogden case is exactly the risk a contributor takes when he elects to receive monthly the maximum allowance to which he is entitled. He may receive nothing or on the other hand if, as would have been the case here, he had lived beyond 10 years he would have for the rest of his life received retirement benefits beyond the contribution made by him, or the interest earned thereon, or contributions made by the State while he worked.

Diskin v. Philadelphia Police Pension Fund Association, 367 Pa. 273 (1951), as well as the cases therein cited, are all clearly distinguishable and not persuasive here. The bylaws of the pension fund involved in the Diskin case provided specifically that certain beneficiaries of the retired person should receive benefits if the retired person should die *before he received any pension payment.* The Supreme Court found that Diskin had died before receiving any payment and so his beneficiaries were entitled.

Neither Dom v. State Employes' Retirement Board, 345 Pa. 489 (1942), nor Hargest v. State Employes' Retirement Board, 79 D. & C. 549, 62 Dauph. 165 (1951), are any authority for the proposition that appellants here espouse. In both of those cases it was the *declared intention* or the *expressed wishes* of the employe that the courts looked for, discovered, and then by liberal construction, upheld. If anything, these cases are authority for the position of the board in the instant case, for they hold that such employment contracts containing provisions for retirement pay are to be liberally construed to effectuate the declared intention of the parties. In the instant case, the board's decision gives effect to Ogden's declared intention.

It has been repeatedly said that retirement systems create contracts between the Commonwealth and the employes who are members of the system: Dom v. State Employes' Retirement Board, supra; Kline v. State Employes' Retirement Board, 353 Pa. 79 (1945). In the contract here in question, as was true also in the Dom case, the exercise of the contributor's rights was complete when he expressed his election to retire and chose the manner in which he would receive his allowance even though he died before receiving any payment. To now direct that Ogden be considered to have made a different election would be to judicially remake his con-

tract. This we cannot do and the law cannot be construed to give us this authority.

The retirement system was adopted along with its mortality tables after a careful actuarial investigation into the mortality and service experience of the contributors and beneficiaries; and rates of contributions of the contributors were fixed after this investigation. For us to say here that appellants' position is the correct one could, in our opinion, lead to the actuarial weakening of the entire system.

In view of what we have heretofore said, we enter the following

### Order

And now, July 17, 1961, the appeal is dismissed at the cost of appellants and the adjudication and order of the Public School Employes' Retirement Board is affirmed.