557 A.2d 1128

Estate of Ruth W. Burlingame, Deceased, Petitioner *v.* Commonwealth of Pennsylvania, Public School Employees' Retirement System, Respondent.

Argued September 16, 1988, before Judges CRAIG, DOYLE and PALLADINO, sitting as a panel of three. Reargued February 8, 1989, before President Judge CRUMLISH, JR., and Judges CRAIG, DOYLE, BARRY, COLINS, MCGINLEY and SMITH.

*Harold G. Caldwell, Vineski, Brann, Williams, Caldwell & Mott,* for petitioner.

*Richard D. Michlovitz,* for respondent.

OPINION BY JUDGE CRAIG, April 14, 1989:

Before us is an appeal by the Estate of Ruth W. Burlingame (Estate) from an order of the Public School Employees' Retirement Board which denied the request of Amelia Wells, Executrix of the Estate, and Jarvis and Cecelia Burlingame for death benefits.[1] The board also denied the Estate's petition to reopen the record.

The board made the following pertinent findings. Mrs. Burlingame was a member of the Pennsylvania State Employees' Retirement System (System) and had thirty-nine years of service with the System at the time of her retirement on June 18, 1976. At various times before her retirement Mrs. Burlingame had written to the System advising it that she wished to change the beneficiary of her accumulated deductions, and each time she was

---

[1] The Estate appears to be the only petitioner in this Court. We do not see how it has standing to assert the rights of Jarvis and Cecelia who claim to be entitled to death benefits under Ruth Burlingame's agreement with the Board. This standing issue, however, has never been raised by the Board and it is thus waived. *See Erie Indemnity Co. v. Coal Operators Casualty Co.,* 441 Pa. 261, 272 A.2d 465 (1971); *McMullen v. Zoning Hearing Board of Harris Township,* 90 Pa. Commonwealth Ct. 119, 494 A.2d 502 (1985); *Federman v. Pozsonyi,* 365 Pa. Superior Ct. 324, 529 A.2d 530 (1987).

provided with the form which she then completed for that purpose. When she retired, she selected an option (Option 2) under which she would receive a lower monthly retirement payment than under other options, but upon her death the same benefits would then be payable to her survivor annuitant (she nominated her husband as her survivor annuitant). The application for retirement which she received and completed at the time of her retirement advised her that if her "beneficiary" predeceased her, she would have one year to "elect a new beneficiary" and that her monthly allowance would then be recomputed based upon her age and the age and sex of the new beneficiary. Mrs. Burlingame's application was processed and she began to receive benefits. Her husband, who died on May 28, 1984, predeceased her by about six weeks.

As of May of 1984 and up until her death, Mrs. Burlingame's health was failing. She was, however, lucid. During that time Cecelia moved in to care for her. Mrs. Burlingame told Cecelia that she intended to nominate Cecelia and Jarvis, Cecelia's brother, as her new beneficiaries. Mrs. Burlingame, who was their aunt and step-grandmother by marriage as well, secured a change of beneficiary form through communications with a former retirement counselor; the board found that there was no evidence that the form was mailed from the System. Mrs. Burlingame directed Jarvis' wife to complete the form. The board found that Mrs. Burlingame did not know that she would be required to elect one of the System's options to effectuate her intent in addition to completing the form, nor was she aware that such reelection would reduce her monthly annuity.

The nomination of beneficiary form was received by the System on June 28, 1984. On June 29, an employee of the System called Mrs. Burlingame and during the conversation Mrs. Burlingame learned that only one op-

tion would benefit Cecelia and Jarvis. On July 11, the System forwarded to Mrs. Burlingame (1) the nomination of beneficiary form she had completed and dated June 25, 1984, (2) an option designation form, and (3) a new nomination of beneficiary form and the letter which explained the various options to her.

The Board also found:

28. The following options were open to Mrs. Burlingame: 'Maximum Option', 'Option 1', 'Option 2', 'Option 3' and 'Special Option'.

29. The 'Special Option' would permit Mrs. Burlingame to develop and individualize a tailor-made plan to effectuate her intentions with the assistance of the System's actuary. This plan could include two or more beneficiaries or survivor annuitants.

30. Under the Maximum Option, Mrs. Burlingame would simply continue to receive the same monthly benefit she had been receiving but would not be able to provide a substantial death benefit for her designated beneficiaries.

31. Under Option 2 Mrs. Burlingame would be able to name one survivor annuitant, subject to certain actuarial restrictions. Mrs. Burlingame would receive a reduced annuity for her life and her survivor annuitant would receive the same amount for the survivor annuitant's life after Mrs. Burlingame's death. The actuarial restrictions would prevent Mrs. Burlingame from reelecting Option 2 in July of 1984 and naming Jarvis or Cecelia survivor annuitant.

32. Under Option 3, Mrs. Burlingame would be able to name one survivor annuitant, subject to certain actuarial restrictions. Mrs. Burlingame

would receive a reduced annuity for her life and her survivor annuitant would receive one-half that amount for the survivor annuitant's life after Mrs. Burlingame's death. If Mrs. Burlingame reelected Option 3 in July of 1984 and named Jarvis survivor annuitant her monthly payment would be reduced to $569.53 (gross). If Mrs. Burlingame was to reelect Option 3 and name Cecelia survivor annuitant her monthly payment would be reduced to $541.80 (gross).

33. Under Option 1, Mrs. Burlingame could select both Jarvis and Cecelia as beneficiaries, and upon her death, they would be entitled to the 'protected amount' of her retirement account.

The board also found that, if Mrs. Burlingame had elected Option 1, her own monthly annuity would have been reduced by approximately $173.00. Unfortunately, Mrs. Burlingame died on July 12, 1984, before receiving the packet of information mailed to her by the System. The board found that Mrs. Burlingame, although she completed a nomination of beneficiary form, had never reelected an option in writing before her death and, hence, all that was due the Estate was a pro rata portion of the annuity check for the last month of her life. Accordingly, it denied the request of Cecelia and Jarvis for benefits pursuant to Option 1. This appeal followed.

On appeal here, we recognize that our scope of review is limited to determining whether the board's necessary findings of fact are supported by substantial evidence and whether it has committed a constitutional violation or an error of law. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704.

The determinative issue presented in this appeal is whether a retired employee's designation of new benefi-

ciaries is complete without an express selection of payment option when the newly-named beneficiary designation necessarily can involve only one of the several fixed options.

At the time of her retirement, we note that Mrs. Burlingame selected Option 2, which provided a monthly retirement payment to her, and upon her death, the same amount per month to her husband, Charles E. Burlingame, as a *survivor annuitant,* until his death.

After her husband subsequently predeceased her, Mrs. Burlingame completed a Nomination of Beneficiaries form naming Jarvis and Cecelia as equal *beneficiaries* of her retirement account, and mailed the form to the pension system.

Although it is true that the agreement between a retiree and the System is in the nature of a contract, that agreement and the statutory provisions that form it "should be liberally construed to give effect to the intentions of the parties." *Bowers v. State Employes' Retirement Board,* 29 Pa. Commonwealth Ct. 561, 564, 371 A.2d 1040, 1041 (1977). Within this context, we must examine the facts in this case.

Section 8507(j) of The Public School Employees' Retirement Code provides:

> *Nomination of beneficiary or survivor annuitant.* A *member* who is eligible and elects to receive a reduced annuity under Option 1, 2, 3, or 4, *shall nominate a beneficiary or a survivor annuitant, as the case, may be, by written designation filed with the board* at the time of his retirement. A member who has elected Option 1 may change his designated beneficiary at any time. A member having designated a survivor annuitant at the time of retirement shall not be permitted to nominate a new survivor annuitant unless such survivor

annuitant predeceases him or unless the member is awarded a divorce or becomes married subsequent to the election of the option. In such cases the annuitant shall have the right to nominate a beneficiary or new survivor annuitant and to have his annuity recomputed to be actuarially equivalent as of the date of recomputation to the annuity in effect immediately prior to the recomputation. In no other case shall a benefit plan be changed by an annuitant. (Emphasis supplied.)

24 Pa. C. S. §8507(j).

In *Myers v. State Employes' Retirement Board,* 86 Pa. Commonwealth Ct. 552, 486 A.2d 529 (1984), this court considered an identical provision of the State Employees' Retirement Code,[2] and determined that a re-election of a *survivor annuitant* must be done in writing.

In *Myers,* a retired employee elected a retirement option under which he or his wife would receive "monthly benefits of $519.33 as long as either he or his wife … was alive." *Id.* at 553-554, 486 A.2d at 530. In 1980, the wife predeceased the retired employee, and he married again. Shortly thereafter, in June 1981, Mr. Myers informed the board that he wanted his new wife to receive monthly retirement benefits should she survive him. At that time the board informed Mr. Myers that he would have to provide the board with a copy of his deceased wife's death certificate as well as a proof-of-age document for his new wife, and that, because his new wife was younger than his former wife, a substantial reduction of benefits would result. Although the board received the death certificate, they never received proof of Mr. Myers' new wife's age, despite two requests by the

---

[2] 71 Pa. C. S. §5907(j).

board dated July 17, 1981, and March 8, 1982. On May 4, 1982, the board sent Mr. Myers a letter inquiring about his intentions regarding his retirement contract. In various telephone conversations, the board again requested a proof of age. The board sent Mr. Myers a change of beneficiary form which Mr. Myers completed and signed. However, because of the failure to provide proof-of-age documents, the board never sent Mr. Myers the necessary documents to sign a new contract designating his new wife as a survivor annuitant. In August of 1982, Mr. Myers died.

The court, in affirming a denial of benefits to the new wife, concluded that, because Myers had never informed the board in writing "of the choice to exercise a new option, we will not permit such a change in the absence of written proof of age and written designation of a substitute survivor annuitant." *Myers*, 86 Pa. Commonwealth Ct. at 557, 486 A.2d at 532.

The *Myers* case is not controlling here. In *Myers*, the retired employee had been repeatedly told over a period of over thirteen months the steps he had to take in order to have his new wife named as the survivor annuitant. More importantly, there is more than one established option to provide benefits to a *survivor annuitant*; both Options 2 and 3 provide monthly payments, in different amounts, to a survivor annuitant. Thus, in *Myers*, a written designation stating which of the options Myers wished to provide for his new wife was indispensable in order to create a new retirement contract.

In this case, Mrs. Burlingame died within 44 days after her husband; yet, in this short time, and despite her failing health, she managed to complete a Nomination of Beneficiaries form. Moreover, unlike the *Myers* case, Mrs. Burlingame died before she even received the documents that the system sent to her.

A final and crucial distinction is that, in this case, only one established option, Option 1, existed under which Mrs. Burlingame's grandchildren could be *beneficiaries* to her retirement account. In the statute defining the options, only Option 1 includes the word "beneficiary".[3] Both Options 2 and 3 pertain to a "survivor annuitant".[4] The special option, Option 4, 24 Pa. C. S. §8345(a)(4) also deals primarily with survivor annuities and does not use the word "beneficiary." Thus, by sending the System a form entitled Nomination of Beneficiaries, Mrs. Burlingame, by necessary implication evidenced her selection of Option 1, the only established option which provided for payments to a *beneficiary.* Moreover, in the packet of documents the System sent to Mrs. Burlingame, the blank Nomination of Beneficiaries form had a yellow card informing her that the Nomination of Beneficiaries form should be completed only if she selected Option 1. Thus, under the System's own procedure, the filing of a Nomination of Beneficiaries form is, in itself, indicative of a selection of Option 1.

Because retirement contracts are to be "liberally construed to effectuate the declared intention of the parties

---

[3] 24 Pa C. S. §8345(a)(1) provides:
(1) Option 1.—A life annuity to the member with a guaranteed total payment equal to the present value of the maximum single life annuity on the effective date of retirement with the provision that, if at his death, he has received less than such present value, the unpaid balance shall be payable to his *beneficiary.* (Emphasis supplied.)

[4] 24 Pa C. S. §8345(a)(2) and (3) provide:
(2) Option 2.—A joint and survivor annuity payable during the lifetime of the member with the full amount of such annuity payable thereafter to his survivor annuitant, if living at his death.
(3) Option 3.—A joint and fifty percent (50%) survivor annuity payable during the lifetime of the member with one-half of such annuity payable thereafter to his survivor annuitant, if living at his death.

## ERRATA

At the request of the Court we are attaching the dissenting opinion of Judge BARRY in *Edward R. Merida, Petitioner v. Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent,* 117 Pa. Commonwealth Ct. 181, 543 A.2d 593 (1988).

Please insert this opinion in your volume 17.

Murrelle Printing Co., Inc.

to pay compensation for services rendered in the past", *Dom v. State Employes' Retirement Board*, 342 Pa. 489, 494, 28 A.2d 796, 798-99 (1942), Mrs. Burlingame's completed Nomination of Beneficiary form, by necessary implication, also constituted a written notice to the System of her intention to elect Option 1, as well as her express designation of new beneficiaries.

The System emphasizes the point that, as the board found, election of Option 1, in connection with the designation of beneficiaries not survivor-annuitants, would have reduced Mrs. Burlingame's own monthly payment, during her life, by about $173.

However, the System does not claim that the execution of the option form would have communicated that point to the pensioner. The contention is that, in further dealings, Mrs. Burlingame would have been "counseled" as to the effect, presumably by oral discussions. Because such counseling—good administrative practice though it may be—is not assured by law or by the signing of additional forms, the point cannot be decisive.

Moreover, as the board also found, the original retirement application did counsel the petitioner that election of a new beneficiary, in the event her first beneficiary predeceased her, would involve a recomputation of her monthly allowance. Hence, she had been alerted to the advisability of additional information had she desired to obtain it.

When a pension holder communicates in writing a pension designation which is complete and not capable of differing interpretations, and has been unable, by reason of the intervention of death, to submit all the formal designations on official forms, her sufficient writing should be given effect.

Because the deceased pensioner's written re-designation of her pension was, by necessary implication, full and

DISSENTING OPINION BY JUDGE BARRY:

The majority holds that a party appealing a referee's decision to the Board of Review waives any issues not specified as error when the appeal is filed. I do not believe any of the cases relied upon by the majority compel such a result. Furthermore, I am convinced that this decision will lead to unjust results harming the very individuals meant to be aided by the Unemployment Compensation Law, Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, 43 P.S. §§ 751-914. I therefore respectfully dissent.

The Board of Review is a unique body. While it is the ultimate fact finder, *Peak v. Unemployment Compensation Board of Review*, 509 Pa. 267, 501 A.2d 1383 (1985), the Board generally makes these factual determinations by reviewing the entire record made before the referee. Because of this procedure, I agree with the claimant's assertion that the Board is required to rule on all issues presented at the hearing before the referee. The majority's position that this is a "gargantuan task" fails, I believe, for two reasons. First, the majority states that the Board should be assisted by the appealing party's legal argument. However in most proceedings before the Board neither are briefs filed nor is oral argument held. Second, and even more important, there is no caselaw on this exact point, leading to the inescapable conclusion that the Board has been able to complete its duties for over fifty years without requiring what the majority contends it needs.

I disagree strongly with the majority's assertion that the claimant is seeking to reintroduce the concept of basic and fundamental error, a concept rejected by the Pennsylvania Supreme Court in *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974). That concept permitted an appellate court to consider errors at trial when *no objection or exception was made at the time the error was committed*. In the present case, the objection in question was entered before the referee. For that reason, *Dilliplaine* is honored and *Wing v. Unemployment Compensation*

*Board of Review*, 496 Pa. 113, 436 A.2d 179 (1981), is inapposite.

The majority cites three cases for the proposition that an issue not specifically raised before the Board is waived. *Schneider v. Unemployment Compensation Board of Review*, 105 Pa. Commonwealth Ct. 238, 523 A.2d 1202 (1987); *Simpson v. Unemployment Compensation Board of Review*, 79 Pa. Commonwealth Ct. 536, 469 A.2d 733 (1984); and *Abbey v. Unemployment Compensation Board of Review*, 50 Pa. Commonwealth Ct. 323, 413 A.2d 3 (1980). Review of those cases does not convince that they deal with the same situation as we are presented with in this case. *Schneider*, for example, dealt with testimony taken over the telephone at the referee's hearing. When that testimony of an employer witness commenced, no objection was made by the claimant. When the referee decided to terminate the phone call to place another in order to get a better connection, the claimant objected but gave no reason for the objection. On appeal, the claimant sought to have the testimony stricken. While we did state in that opinion that the issue was waived because the claimant failed to raise that issue before the Board, the claimant failed to specifically object to the procedure before the referee; it is for that reason, I believe, that the issue was waived.

Similarly, in *Simpson*, the claimant made a prehearing request to subpoena various witnesses. Evidently, that request was denied and no objection was made at the hearing before the referee. When the claimant sought to challenge that denial on appeal in this Court, we stated, "Since Claimant failed to raise this issue *below*, however, it may not be considered here." *Id.* 79 Pa. Commonwealth Ct. at 540, 469 A.2d at 735 (emphasis added). Again, that case simply does not deal with the question with which we are now presented.

Finally, *Abbey* is also distinguishable. While this Court did state that an issue was waived because it was not raised before the Board, there is no mention in the opinion that the issue was raised before the referee. Further, we relied upon

*Zakrzewski v. Unemployment Compensation Board of Review*, 33 Pa.Commonwealth Ct. 216, 381 A.2d 503 (1978), as support for the stated proposition. In *Zakrzewski*, we held that an issue was waived because it was not raised before *either the referee or the Board.*

I also disagree with the majority's treatment of the claimant's contention concerning the UCP-18 form. While that form was not placed in the record, it is a public document and the board does not challenge that the form, in fact, exists and is given to parties to unemployment compensation proceedings. That form provides, inter alia:

### APPEALS TO THE BOARD OF REVIEW

If you feel that the Referee's decision is incorrect, you should contact the local office of the Office of Employment Security which issued the original determination, to file an appeal. If you cannot report in person to that particular office, you may file an appeal at another local office; or, you may write to the local office that issued the determination. The letter must state specifically that you wish to file an appeal from the Referee's decision, and give the claimant's name, social security number and appeal number.

....

The Board members review the previously established record in connection with each request for a further appeal from the Referee's decision, and will determine whether or not there is any need for an additional hearing.

If the Board determines that the record established at the Referee level meets the Board's fact-finding responsibilities, and that the parties were given an ample opportunity to present their testimony and evidence at the Referee hearing, *then it may proceed to decide the case on the basis of that record.*

....

If you wish to clarify or expand testimony already recorded, you should request, in writing, of the Secretary, UC Board of Review ... the *Board's permission to file a brief ... or to be scheduled for an oral argument* .... before the Board in Harrisburg.

(Emphasis added). The majority states that the information in this form is not pertinent, relying on Board regulations contained in the Pennsylvania Code. All that those regulations require is that the appealing party state "[t]he reasons for the appeal." Pa. Code § 101.82. Even if a party were to go to the Pennsylvania Code, this language, when considered with the informational form provided by the OES, would not lead a party to the conclusion that the specificity called for by the majority is required. *See Gill v. Unemployment Compensation Board of Review*, 165 Pa. Superior Ct. 605, 70 A. 2d 422 (1950) (where a party is unintentionally misled by the Bureau, courts will relieve the innocent party of the consequences of reliance on such misleading information).

Were the Board to require such specificity, fairness would require that such a change be done by regulation in a prospective manner. As already mentioned, because there are no cases directly on point, I believe it has been the Board's practice to review the entire record and all objections made before the referee. With the majority's holding today, parties who have already filed appeals to the Board prior to today's decision will find that issues have been waived when in the past such waiver did not exist.

In conclusion, I believe that all objections made before the referee are preserved for review by the Board when a party appeals a referee's determination. Because the claimant here objected to the second hearing, I would remand for specific factual findings concerning the reason for the employer's absence at the original hearing.

complete, the System should not be permitted to subject her pension account's substantial beneficiary entitlement of $107,972.26 to what amounts to a forfeiture for lack of an unnecessary additional paper form.

Accordingly, the decision of the board must be reversed and the System directed to pay $107,972.26, plus interest, in equal half-shares, to Cecelia Burlingame and Jarvis Burlingame.

ORDER

NOW, April 14, 1989, the order of the Public School Employees' Retirement Board in the above-captioned matter is hereby reversed.

DISSENTING OPINION BY JUDGE DOYLE:

I respectfully dissent. The majority holds that the completion of the nomination beneficiary form together with certain parol evidence should be deemed legally sufficient for the Board to determine that an Option 1 designation should be honored. Although I have great sympathy for Cecelia and Jarvis and recognize the tragic circumstances of this case, I must reject the majority's position. I do so for several reasons. First, I believe that the statute's statement that an option designation form be in writing is clear. Second, while Mrs. Burlingame may have wanted to benefit Cecelia and Jarvis, the Board found that she was unaware that in so doing she would have been reducing her own monthly payments. Thus, she was unaware of the consequences of such a nomination.[1] And even though she was in failing health, I refuse

---

[1] The majority notes that Mrs. Burlingame had been counseled concerning her *original* retirement application. In my view this is insufficient to demonstrate that she understood the consequences of a new and different choice. And while "counseling" may not be statutorily required, a meeting of the minds is most certainly contractually required.

to assume that she knew her demise was imminent. Indeed, the natural human inclination is probably to the contrary. Third, as a matter of public policy, I believe that allowing oral evidence to establish the intent of the deceased member as to a retirement option would foster litigation and place the System in the impossible situation of attempting to carry out the undocumented wishes of the member while refereeing family disputes. This is not to suggest that there is any animosity present in this case, but a rule of law which can be applied to every case must be established.

The majority contends that only one option existed in which "beneficiaries" could be appointed. I cannot agree. I believe that the special option,[2] although it does not

---

[2] The special option provides:

Option 4.—Some other benefit which shall be certified by the actuary to be actuarially equivalent to .the maximum single life annuity, subject to the following restrictions:

(i) Any annuity shall be payable without reduction during the lifetime of the member except as the result of the member's election to receive an annuity reduced upon attainment of age 65, in anticipation of the receipt of a social security benefit.

(ii) The sum of all annuities payable to the designated survivor annuitants shall not be greater than one and one-half times the annuity payable to the member.

(iii) A portion of the benefit may be payable as a lump sum, except that such lump sum payment shall not exceed an amount equal to the accumulated deductions standing to the credit of the member. The balance of the present value of the maximum single life annuity adjusted in accordance with section 8342(b) shall be paid in the form of an annuity with a guaranteed total payment, a single life annuity, or a joint and survivor annuity or any combination thereof but subject to the restrictions of subparagraphs (i) and (ii) of this paragraph.

Section 8345(a)(4) of the Public School Employees' Retirement Code, 24 Pa. C. S. §8345(a)(4).

use the word "beneficiary," is sufficiently general so as to encompass a situation involving a beneficiary.

I note that the facts in *Myers v. State Employes' Retirement Board*, 86 Pa. Commonwealth Ct. 552, 486 A.2d 529 (1984), were also somewhat tragic and, contrary to the majority, believe that its holding applies to this case. In *Myers* the member had named his wife as survivor annuitant. She predeceased him and he remarried. He then advised the State Employees' Retirement Board that he wished to designate his new wife as his survivor annuitant. He was informed that he would have to supply the Board with certain information including his current wife's age. Despite communications with the Board over the course of nearly a year, he failed to submit this information. Upon his death the Board refused to designate the widow as a survivor annuitant and we affirmed stating, "[a]s Mr. Myers never informed the Board of the choice to exercise a new option, we will not permit such a change in the absence of written proof of age and written designation of a substitute survivor annuitant." *Id*. at 557, 486 A.2d at 532. *See generally Estate of McGovern v. State Employees' Retirement Board*, 512 Pa. 377, 517 A.2d 523 (1986).

Mrs. Burlingame's estate relies upon *Dom v. State Employes' Retirement Board*, 345 Pa. 489, 28 A.2d 796 (1942), and *Hargest v. State Employes' Retirement Board*, 79 Pa. D. & C. 549 (1951). In those cases, however, the appropriate forms had been completed and the option selected, and the Board in each case attempted to assert a technical defect (in *Dom*, the failure to state the date of retirement and in *Hargest*, the failure to state the date of retirement and the filing of the letter with the Governor rather than the Board) which would have rendered the deceased member's written application ineffective. In both cases the Board's actions were reversed. In

this case, however, what was not completed was the basic *option selection itself*. That choice goes to the core of the member's rights and its absence cannot be viewed as a mere technical noncompliance.

Because of the various reasons I have enumerated, I believe that the Board correctly decided this case and would affirm its order.

Judge McGINLEY joins in this dissent.