**Paula M. KIRSOP, Petitioner,**

v.

**PUBLIC SCHOOL EMPLOYES' RETIREMENT BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 8, 2000.

Decided March 7, 2000.

---

J. Matthew Horgan, Pittsburgh, for petitioner.

Charles K. Serine, Harrisburg, for respondent.

Thomas N. Papadakos, Pittsburgh, for intervenors, Tammy M. & Herbert T. Kirsop, III.

Before DOYLE, President Judge, FRIEDMAN, J., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Paula M. Kirsop (Kirsop) appeals from an order of the Public School Employes' Retirement Board (Board) that held that Kirsop was not entitled to 100% of the proceeds from the retirement account of Herbert T. Kirsop (Decedent), who was her former husband; rather she was limited to 50% of the death benefits pursuant to a marital settlement agreement (MSA) and a qualified domestic relations order (QDRO).

The facts of this case, derived from the stipulation entered into by the parties, are summarized as follows. In 1983, Decedent filed a Nomination of Beneficiaries Form (Form), designating Kirsop as his primary beneficiary and his children as contingent beneficiaries. The Kirsops separated in 1993 and divorced on March 29, 1995. The divorce decree incorporated the MSA, which included Section 14 that purported to dispose of the distribution of Decedent's pension benefits held by the Public School Employes' Retirement System (PSERS).[1]

---

1. Section 14 of the MSA states:

14. PENSION

Husband is the owner of a pension through the Commonwealth of Pennsylvania Public School Employees Retirement System. *Husband and wife acknowledge that wife is entitled to fifty percent (50%) of the marital share of the pension acquired by husband from the date of employment until date of marital separation, being July 19, 1993.* Wife shall receive her share of the pension by way Qualified Domestic Relations Order (Q.D.R.O.). Counsel for wife shall prepare, at the sole expense of wife, said Qualified Domestic Relations Order. Husband shall cooperate in all manner deemed reasonable in the securing of the Q.D.R.O. Finalization of the divorce and attendant settlement shall be processed without regard to the acceptance of the Q.D.R.O., said acceptance may occur later. Husband acknowledges that, in the event his pension shall be paid to him prior to the acceptance of the Q.D.R.O. by the Court,

The MSA acknowledges Kirsop's entitlement to 50% of the marital share of the retirement benefits and provides that she would receive her share by way of a QDRO. A draft QDRO was prepared but not signed by the parties; nor was it submitted to PSERS until PSERS requested its submission after Decedent's death. The parties stipulation of facts included the language of Section 14 of the MSA (see footnote no. 1) and the language contained in Section 7 of the MSA, entitled Mutual Release, which is a general release that does not specifically refer to the pension benefits at issue. The stipulation of facts also references a brochure published by PSERS that provides that a QDRO cannot be effective unless it is approved by PSERS.

Following Decedent's death on January 12, 1998, Kirsop received notification from PSERS of its intention to pay her 100% of the death benefits. However, upon learning of the divorce and the existence of the MSA, PSERS requested copies of the divorce decree, the MSA § and the unsigned QDRO. As a result of these submissions, Kirsop was informed that she was entitled to 50% of the marital portion of the retirement benefits. PSERS concluded that these documents were "a clear written indication of the decedent's desire to change the terms of the beneficiary designation.... [and that PSERS] is required to apportion the death benefit in accordance with the Court Order." (R.R. 6a).

Kirsop filed a request for an administrative hearing before the Board to contest the denial of her entitlement to 100% of the Decedent's death benefits. After hearing, the Board concluded the PSERS correctly determined the distribution of Decedent's benefits.

■ Kirsop now appeals to this Court,[2] and raises the following issues for our review: 1) whether the Form conclusively establishes Decedent's intentions and/or whether extrinsic evidence can be considered in determining the proper distribution of the death benefits, and 2) whether the Board erred because no explicit waiver of the rights to 100% of the death benefits exists.

I

Kirsop first argues that pursuant to *Hess v. Public School Employes' Retirement Board*, 75 Pa.Cmwlth. 25, 460 A.2d 1231 (1983), a change in beneficiaries must be made in writing to the Board and that, because Decedent failed to change the beneficiary on PSERS' Form, the Board erred in concluding that Decedent had the intent to change his beneficiary. This argument relies on the fact that the MSA § and the unsigned QDRO were not filed with the Board prior to decedent's death.

Kirsop next contends that Section 21 of the Probate, Estates and Fiduciaries Code (Code), 20 Pa.C.S. § 6111.2,[3] which became effective on December 20, 1992, cannot be applied retroactively, because doing so would violate the contract clause of the

husband shall be responsible to wife for the monthly amount which is owed her until the Q.D.R.O. is in effect. Wife shall be solely responsible to pay any tax due on payments by husband. [Emphasis added.]

2. Our scope of review is limited to determining whether the Board's necessary findings of fact are supported by substantial evidence and whether it has committed a constitution violation or an error of law. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

3. 20 Pa.C.S. § 6111.2 provides that if a domiciliary of the Commonwealth is divorced at the time of his death following designation of his spouse as his beneficiary of his pension plan, etc., this designation "in favor of his former spouse which was revocable by him after the divorce shall become ineffective for all purposes and shall be construed as if such former spouse had predeceased him unless it appears from the wording of the designation, a court order or a written contract between the person and such former spouse that the designation was intended to survive the divorce."

Pennsylvania Constitution. *Parsonese v. Midland National Insurance Co.,* 550 Pa. 423, 706 A.2d 814 (1998). Thus, Kirsop argues that Section 21 of the Code cannot apply to this case because the Form was filed prior to the effective date of that section of the Code. Kirsop further argues that any reliance on Section 21, even for guidance, and on "extra-contractual" documents equates with an unconstitutional impairment of her contract rights that are reflected in the Form.

Kirsop also argues that because divorce does not create an automatic revocation of the beneficiary designation and she did not explicitly waive her right, the Board erred in reducing the amount of her benefit as recorded on the Form. Kirsop relies on *Equitable Life Assurance Society of the United States v. Stitzel,* 299 Pa.Super. 199, 445 A.2d 523 (1982), a case decided prior to the effective date of Section 21 of the Code. The *Stitzel* court held that the beneficiary to life insurance proceeds in a property settlement agreement must explicitly waive his interest, which cannot be accomplished by a general mutual release. Kirsop contends that she did not waive her interest in either of the MSA's clauses (mutual release or pension clause) or in the unsigned QDRO, i.e., no explicit language relinquishing her claim exists.

To further support this argument that an explicit waiver of her rights to Decedent's retirement benefits is necessary, Kirsop distinguishes *Roth v. Roth,* 413 Pa.Super. 88, 604 A.2d 1033 (1992), *appeal denied,* 533 Pa. 625, 620 A.2d 491 (1993) (agreement states the parties release each other from any interest in their respective pension plans), and *Layne v. Layne,* 442 Pa.Super. 398, 659 A.2d 1048 (1995), *appeal denied,* 542 Pa. 671, 668 A.2d 1134 (1995) (agreement states that pension, etc. would belong solely to husband). Then citing the language of Section 14 of the MSA, Kirsop contends that recognition or acknowledgement of a spouse's equitable share in a pension is not the same as an explicit waiver of the right to that interest.

## II

In response to Kirsop's arguments, the Board cites the Public School Employees' Retirement Code (Code), 24 Pa.C.S. § 8101–8534. Specifically, the Board relies on Section 8533(c) of the Code, 24 Pa.C.S. § 8533(c), which states that "[r]ights under this part shall be subject to attachment in favor of an alternate payee as set forth in an approved domestic relations order." [4] Thus, the Board argues that the Code allows a member to designate a person in writing to receive the member's accumulated deductions upon the death of the member and that such designation is generally not subject to attachment with one exception, which is attachment pursuant to a domestic relations order, which the Board concludes is the situation here.

As for Kirsop's reliance on *Hess,* the Board recognizes that *Hess* stands for the general rule that a change in beneficiaries must be made in writing. However, the Board argues that *Hess* does not involve the subsequent writings, specifically, an attachment pursuant to an approved domestic relations order, and is, therefore, inapposite. In fact, the Board, relying on 24 Pa.C.S. § 8533(c), contends that as a matter of law the right of the beneficiary to a pension benefit is subject to attachment pursuant to a domestic relations order and does not require the member to complete and execute a separate Form.

The Board also argues that Kirsop's assertions are elevating form over substance when she argues that the QDRO was not signed by the parties, entered as an order of court or certified by the secretary of the Board. The Board argues that every requirement set out in Section 8533.1(a)(1)–(7) of the Code, 24 Pa.C.S. § 8533.1(a)(1)–(7), has been met and that because the

---

4. The requirements for obtaining an approved Domestic Relations Order are set forth in Section 8533.1 of the Code, 24 Pa.C.S. § 8533.1.

QDRO parallels the MSA, which was approved by the court through the divorce decree, it has determined the proper distribution of the death benefits according to law.

Furthermore, the Board believes it followed the dictates of *Burlingame v. Public School Employees Retirement System,* 125 Pa.Cmwlth. 178, 557 A.2d 1128 (1989), *appeal denied,* 524 Pa. 600, 568 A.2d 1250 (1989), wherein the Board is directed to liberally construe the Code. In *Burlingame,* the court held that a deceased member's failure to choose and file an option election form was not fatal to provide for the payment of benefits to her named beneficiaries.[5] The *Burlingame* court determined that the Board should give effect to the obvious intent of the member. Here, by giving effect to the QDRO and MSA, the Board argues it carried out the intent of Decedent.

The Board also cites Section 3323(d) of the Divorce Code, 23 Pa.C.S. § 3323(d), which requires that in the event of death of one of the parties in a divorce action prior to the final settlement of property rights, the personal representative of the deceased party shall continue the action on behalf of the deceased party. Therefore, the Board believes that Decedent's estate could be required to sign the unsigned QDRO on behalf of Decedent to effectuate the proper distribution of marital property and that the parties' failure to execute the QDRO is not fatal to the equitable distribution.

The Board also argues that the divorce decree, which is a court order incorporating the MSA together with the QDRO that works as an attachment of the pension fund, cannot be ignored by the Board, i.e., PSERS is bound to enforce attachment orders issued pursuant to the Divorce Code. *Millick v. Millick,* 140 Pa.Cmwlth. 252, 592 A.2d 788 (1991), *appeal denied* 529 Pa. 659, 604 A.2d 250 (1992). Otherwise, PSERS could be subject to a contempt order.

Lastly, as to the Kirsop's argument that she did not explicitly waive her interest in Decedent's pension, the Board discusses *Stitzel, Layne* and *Roth* recognizing that here the Mutual Release paragraph alone would not be enough to show that Kirsop waived her rights. However, the Board contends that the import of the language in Section 14 of the MSA provides for Kirsop's entitlement to 50% of the Decedent's pension. Even though that section is not couched in release language, the Board argues that it means the same thing, i.e., Kirsop relinquishes her right to 50% of the benefits.

## III

We have reviewed the statutory provisions and the case law cited by the parties. We agree with the Board's conclusion that *Hess* is distinguishable because no other documentation was at issue in that case. We also conclude that because 24 Pa.C.S. § 8533(c) provides for attachment through a domestic relation order without additionally requiring the execution of a separate form, the QDRO here is enough. This is so because the divorce decree incorporates the MSA, which is clearly representative of the parties' intent as to Decedent's pension fund, and is an order of court with which PSERS is required to comply.

We also do not condone Kirsop's failure to perform her duty under the MSA, which

---

5. Upon her retirement, Mrs. Burlingame chose an option, which would pay benefits to her until her death and then would pay benefits to her husband. When her husband died, she decided to nominate two others as her beneficiaries. She sent in a change of beneficiary form, but died before a packet of documents from PSERS reached her. Thus, she never effectuated the change on an option selection form that would provide for her named beneficiaries to receive the remainder of her annuity. The court determined that the change in beneficiary form evidenced Mrs. Burlingame's intent and by implication constituted notice to PSERS that she wished to elect the option that would coincide with her express designation of new beneficiaries.

required Kirsop to prepare the QDRO and see that it was finalized so as to protect her interest.[6] To now allow her to use that failure to perform an agreed upon act as the basis for her argument that she entitled to 100% of the benefits is at a minimum disingenuous. We are also persuaded by the provision in the Divorce Code that directs a decedent's personal representative to continue the divorce action to its conclusion.

As for Kirsop's contention that a waiver of pension benefits must be explicit, we agree that the Mutual Release section of the M.S.A. does not adequately waive any interest that she may have. However, we disagree with Kirsop's characterization of Section 14 of the MSA. That section, entitled Pension, evidences an agreement by the parties that Kirsop is only entitled to 50% of the marital share. That language cannot be construed in any manner except to indicate an intent to waive the other 50% of the marital share. We believe that both the *Roth* and *Layne* cases support this interpretation. Although in *Roth* the agreement's language specifically expressed the parties' relinquishment of the other's pension, the language in the *Layne* agreement provided that the pension would be "solely the husband's." We conclude that the acknowledgement that the wife is entitled to 50% of the pension is no less explicit than the language in *Layne* and, thus, controls the result here.

For the reasons stated above, we affirm the Board's order.

### ORDER

NOW, March 7, 2000, the order of the Public School Employees' Retirement Board in the above-captioned matter is affirmed.

---

**6.** If Kirsop failed to finalize the QDRO as she did here and Decedent had filed a new beneficiary form naming the couple's two children as the beneficiaries to the exclusion of Kirsop, she would be arguing that the QDRO and the MSA evidence the intent of the parties that she was entitled to 50% of the marital share of the benefits.