J-A11039-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MATTHEW MUSKET | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KELLY J. MUSKET | : | No. 1324 MDA 2019 |

Appeal from the Order Entered May 23, 2019
In the Court of Common Pleas of Berks County Civil Division at No(s):
15-18475

BEFORE:   PANELLA, P.J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:              **FILED JUNE 15, 2020**

Appellant Matthew Musket ("Husband") appeals from the Order entered

in the Court of Common Pleas of Berks County on May 23, 2019, made final

for purposes of appeal by the Order entered on July 15, 2019, in accordance

with Pa.R.A.P. 341(c), denying Husband's Exceptions to the Master's Report

and Recommendation for Equitable Distribution which, *inter alia*, deferred

valuation and distribution of Kelly J. Musket's ("Wife") Pennsylvania State

Employees' Retirement System ("PSERS") pension.  We affirm.

The trial court set forth the relevant facts and procedural history herein

as follows:

> The parties in the above-captioned divorce, [Husband] and
> [Wife] were married on June 26, 2006. Husband initiated divorce
> proceedings on September 23, 2015. This appeal arises out of this
> [c]ourt's order of July 15, 2019, designating our order of May 23,

_____

[*] Former Justice specially assigned to the Superior Court.

2019, denying Husband's Exceptions, a Final Order for the purposes of an appeal pursuant to Pa R.A.P. No. 341(c).

**Procedural History**

The parties appeared before the Divorce Hearing Master, Jill Gehman Koestel, on December 5, 2018 and December 27, 2018. The Master's Report and Recommendation was filed on February 12, 2019. [Husband] filed Exceptions to the Master's Report alleging the Master erred by: (1) failing to make a finding of value of Wife's [PSERS] pension, (2) failing to apply an immediate offset valuation to [Wife's] PSERS pension, (3) failing to protect [Husband] against [Wife's] decease or disability prior to retirement by requiring [Husband] be designated as the beneficiary of [Wife]'s PSERS pension death benefit ([Husband's] Statement of Matters, ¶ 13 - 15).
We considered the above issues, and, following argument on [Husband's] Exceptions and a review of the transcript of the Divorce Master Hearings and all other pleadings, entered an order denying all of [Husband's] Exceptions, having found that the Master committed no error of law or fact.

Trial Court Opinion, filed 10/9/19, at 1-2.

Husband filed a timely notice of appeal on August 12, 2019. On August 27, 2019, Husband filed his concise statement of matters complained of on appeal which spans four pages and contains fifteen, separately enumerated paragraphs, some of which contain multiple subparts. The trial court filed its Opinion pursuant to Pa.R.A.P. 1925(a) on October 9, 2019.

Before we consider the merits of Appellant's questions presented on appeal, we first must determine whether he has preserved them for appellate review. This Court explained in ***Riley v. Foley***, 783 A.2d 807, 813 (Pa.Super. 2001), that Pa.R.A.P. 1925 is a crucial component of the appellate process because it allows the trial court to identify and focus on those issues the

parties plan to raise on appeal. We further determined that "a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent to no Concise Statement at all." *Commonwealth v. Dowling*, 778 A.2d 683, 686-87 (Pa.Super. 2001). "Even if the trial court correctly guesses the issues Appellant[] raise[s] on appeal and writes an opinion pursuant to that supposition the issues are still waived." *Kanter v. Epstein*, 866 A.2d 394, 400 (Pa.Super. 2004) (citation omitted, *appeal denied,* 584 Pa. 678, 880 A.2d 1239 (2005), *cert. denied, Spector, Gadon & Rosen, P.C. v. Kanter,* 546 U.S. 1092, 126 S.Ct. 1048, 163 L.Ed.2d 858 (2006).

We also have stated that:

When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review. When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues.

In other words, a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all. While [*Commonwealth v. Lord*, 553 Pa. 415, 719 A.2d 306 (1998)] and its progeny have generally involved situations where an appellant completely fails to mention an issue in his Concise Statement, for the reasons set forth above we conclude that *Lord* should also apply to Concise Statements which are so vague as to prevent the court from identifying the issue to be raised on appeal....

*Lineberger v. Wyeth*, 894 A.2d 141, 148 (Pa.Super. 2006) (quoting *Commonwealth v. Dowling*, 778 A.2d 683, 686-87 (Pa.Super. 2001)).

This Court similarly has found waiver applicable to voluminous concise statements. As indicated in **Tucker v. R.M. Tours**, 939 A.2d 343, 346 (Pa.Super. 2007):

> Our law makes it clear that Pa.R.A.P. 1925(b) is not satisfied by simply filing any statement. Rather, the statement must be "concise" and coherent as to permit the trial court to understand the specific issues being raised on appeal. Specifically, this Court has held that when appellants raise an "outrageous" number of issues in their 1925(b) statement, the appellants have "deliberately circumvented the meaning and purpose of Rule 1925(b) and ha[ve] thereby effectively precluded appellate review of the issues [they] now seek to raise." **Kanter**, 866 A.2d at 401. We have further noted that such "voluminous" statements do not identify the issues that appellants actually intend to raise on appeal because the briefing limitations contained in Pa.R.A.P. 2116(a) makes the raising of so many issues impossible. **Id.** "Further, this type of extravagant 1925(b) statement makes it all but impossible for the trial court to provide a comprehensive analysis of the issues." **Jones v. Jones**, 878 A.2d 86, 90 (Pa.Super. 2005).

In the matter *sub judice*, the trial court indicated in its Rule 1925(a) Opinion that while at first blush Husband's concise statement appeared to assert fifteen separate claims, the allegations of error "revolve around a single asset, [Husband's] interest in the PSERS pension, and relate to the valuation and distribution of that pension." Trial Court Opinion, filed October 9, 2019, at 2. The same can be said for the issues presented in Husband's appellate brief. Thus, in light of the fact that the trial court was able to conduct a meaningful review of the issues Husband sought to raise, and Husband raises essentially those same issues for this Court's consideration, we decline to find

Husband's issues waived for filing a deficient concise statement and proceed

to consider the merits of the following three claims he presents for our review:

> I.     DID THE MASTER ERR IN FAILING AND REFUSING TO FIND A VALUE AS TO [WIFE'S] PUBLIC-SCHOOL EMPLOYEES RETIREMENT SYSTEM (PSERS) BENEFIT AND DID THE LOWER COURT ERR IN DENYING [HUSBAND'S] EXCEPTIONS THERETO?
>
> II. DID THE MASTER ERR IN FAILING AND REFUSING TO RECOMMEND AN IMMEDIATE OFFSET OF THE MARITAL PORTION OF [WIFE's] PSERS BENEFIT AGAINST OTHER MARITAL ASSETS RATHER THAN A DEFERRED DISTRIBUTION THEREOF AND DID THE LOWER COURT ERR IN DENYING [HUSBAND'S] EXCEPTIONS THERETO?
>
> III. DID THE MASTER ERR IN FAILING TO RECOMMEND A DECREE WHICH WOULD PROTECT [HUSBAND'S] RIGHTS IN REGARD TO [WIFE'S] PSERS BENEFITS IN THE EVENT OF DEATH OR DISABILITY AND DID THE LOWER COURT ERR IN DENYING [HUSBAND'S] EXCEPTIONS THERETO?

Brief of Appellant at vi.  As Husband's first two issues are interrelated, we will

consider them together.  In doing so, we are mindful of this Court's well-

settled role in reviewing equitable distribution awards:

> Our standard of review in assessing the propriety of a marital property distribution is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence.

*McCoy v. McCoy*, 888 A.2d 906, 908 (Pa.Super. 2005) (internal quotations

and citation omitted).  We have further stated:

> This Court will not find an "abuse of discretion" unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award,

courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence. We are also aware that a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties.

***Carney v. Carney***, 167 A.3d 127, 131 (Pa.Super. 2017) (citations omitted).

Wife's PSERS account is a defined benefit pension plan. Section 3501(c) of the Divorce Code speaks to the calculations that must be made when valuing a defined benefit retirement plan for purposes of equitable distribution according to either an immediate offset or a deferred distribution method:

**(c) Defined benefit retirement plans.--**Notwithstanding subsections (a), (a.1) and (b):

(1) In the case of the marital portion of a defined benefit retirement plan being distributed by means of a deferred distribution, the defined benefit plan shall be allocated between its marital and nonmarital portions solely by use of a coverture fraction. The denominator of the coverture fraction shall be the number of months the employee spouse worked to earn the total benefit and the numerator shall be the number of such months during which the parties were married and not finally separated. The benefit to which the coverture fraction is applied shall include all postseparation enhancements except for enhancements arising from postseparation monetary contributions made by the employee spouse, including the gain or loss on such contributions.

(2) In the case of the marital portion of a defined benefit retirement plan being distributed by means of an immediate offset, the defined benefit plan shall be allocated between its marital and nonmarital portions solely by use of a coverture fraction. The denominator of the coverture fraction shall be the

- 6 -

number of months the employee spouse worked to earn the accrued benefit as of a date as close to the time of trial as reasonably possible and the numerator shall be the number of such months during which the parties were married and not finally separated. The benefit to which the coverture fraction is applied shall include all postseparation enhancements up to a date as close to the time of trial as reasonably possible except for enhancements arising from postseparation monetary contributions made by the employee spouse, including the gain or loss on such contributions.

23 Pa.C.S.A. §§ 3501 (c)(1), (2).

This Court has observed:

The first method, "immediate offset," awards a percentage of the marital portion of the value of the pension to the party earning it, and offsets the marital value of this pension with other marital assets at equitable distribution. This method is preferred where the estate has sufficient assets to offset the pension, because it does not require the court to retain jurisdiction indefinitely. The second method, "deferred distribution," generally requires the court to retain jurisdiction until the pension is collected, at which point the pension is divided according to the court's order. This method is more practical where the parties lack sufficient assets to offset the marital value of the pension.

We have recognized that neither distribution scheme will be appropriate to all cases. Rather, the trial court must balance the advantages and disadvantages of each method according to the facts of the case before it in order to determine which method would best effectuate economic justice between the parties.

***Conner v. Conner***, 217 A.3d 307, 312 (Pa.Super. 2019) citations omitted.

In the matter *sub judice*, Husband first avers the trial court erred in accepting and approving the Master's alleged failure and refusal to set a present value for Wife's PSERS pension. Husband posits such failure constituted a derogation of the Master's duty and an abuse of her discretion. Brief of Appellant at xiii, 4. Husband states the Master refused to do so in

light of her "unwillingness to contradict her preconceived notions as to the valuation of such benefits." Brief of Appellant at xiii.

In support of his position, Husband points to the Master's erroneous view at the hearings on December 5, 2018, December 27, 2018, that the value of the PSERS Benefit for purposes of equitable distribution was the accrued death benefit as set forth in the annual PSERS Statement issued on June 30 of each year, despite the parties' experts' explanations to the contrary. *Id*. at 4.[1] Husband also asks this Court to disregard the testimony and calculations of Wife's expert "as it is based upon at least a triad of erroneous assumptions" and "supplant the nonfinding of the Lower Court with [our] own finding of value as requested." *Id*. at 5-7, 11. Specifically, Husband urges this Court to make a finding as to the present value of Wife's PSERS pension by choosing one of the several calculations provided by Husband's expert. *Id*. at 9-10.

Husband next maintains the trial court erred and abused its discretion in failing to order an immediate offset of the marital portion of Wife's PSERS benefit against other marital assets. Husband reasons that the immediate offset method historically has been the preferred method of distributing a Defined Benefit Pension Plan, although he believes the Master revealed a predisposition in this matter to the contrary. *Id* at 12-15. Husband also

---

[1] As Husband notes, the Master eventually acknowledged her error. *Id*. at 4. (citing N.T. Divorce Hearing 15/5/18-12/27/18 at 65-66).

points to numerous factors that he deems command an immediate offset of Wife's defined benefit to effect economic justice. *Id*. at 16-18.

Both parties presented expert testimony at the Master's Hearing. Husband's expert, Jonathan D. Cramer, is a licensed actuary who has testified in Berks County, among others, regarding the issue of valuation of pension benefits, including PSERS. Wife's expert, William Ehrich, Esquire, is an attorney whose practice focuses on the preparation of ADRO's, DRO's, and QDRO's for the purposes of distributing pension benefits. The parties stipulated that both Mr. Cramer and Mr. Ehrich were "expert[s] in regard to pension evaluations." N.T. Divorce Hearing, 12/5/18-12/27-18, at 6.

As the trial court noted, the Master found a significant discrepancy of an amount nearly $100,000.00 among the numerous, final valuations presented by each expert. These valuations differed based on whether each expert used a retirement age for Wife of 58.1 or 62, as well as other variables, such as the applicable interest rate. Trial Court Opinion, 10/9/19, at 2-3. In finding no error of law or fact in the Master's determination that a deferred distribution of the marital portion of Wife's PSERS pension would be the most equitable solution, the trial court found the Master had clearly articulated the factors and explained the weight she afforded to each in her recommendation as follows:

> Both experts were knowledgeable in regard to the PSERS pension but approached their valuations using very different interest rates causing huge differences in the valuations. Mr. Cramer assumed an effective 2.84 discount rate in determining his valuation and

Mr. Ehrich assumed an effective 4.55 discount rate. Mr. Cramer, within the report of his second explanatory letter and on the stand, and Mr. Ehrich, on the stand, agreed that the difference between their two reports was attributable to the different discount rates they employed. Both experts justified the use of their discount rates by referring to tables used by two different entities. Mr. Cramer used the PBGC annuity valuation interests, and Mr. Ehrich uses the most recent Variable Premium Rates together with PBGC 2018 mortality tables. Neither expert succeeded in convincing me that their method of valuation was more valid than the other method used.

Mr. Myers provided a Memorandum of Law regarding the policy reasons for applying immediate offset over deferred distribution. Although the immediate offset method has been preferred, at least from cases dating more than 25 years ago, the most recent amendment to the divorce code reflected in 23 Pa.C.S.A section 3501 (c) sets forth specific instruction for distribution of a defined benefit plan for both immediate offset and deferred distribution without expressing any preference for which distribution method is used. The focus should remain on Section 3502's charge to equitably divide the marital property.

In this matter, there is a huge discrepancy between the valuations of each expert based on whether they used a retirement age of Wife of 58.1 or 62. Wife gave no indication as to when she was planning to retire. If I choose a valuation using a retirement date of 58.1 and Wife continues to teach until she is 62, then I have seriously compromised Wife's economic parity in this divorce. If I use a retirement age of 62 and Wife retires at her earliest retirement age of 58.1, I have seriously compromised Husband's economic parity in this matter. Examining the experts' reports with the experts using the common valuation date based on Wife's 2017 PSERS statement and assuming a retirement at age 58.1, as is used in the PSERS statement to determine its present value of $299,938 (including both marital and non-marital portions), the marital value determined by Mr. Cramer and Mr. Ehrich differ by almost $100,000. This is not a situation in which averaging the two values is practical or valid as frequently occurs with real estate valuations. This is a situation in which the fact finder must decide who is right and who is wrong. Considering the validity of both valuation methods, it is impossible to arbitrarily pick one of the values. It is just not equitable to do that.

In addition, Husband's expert provided valuations using every different statement with which he was provided, in addition to providing a valuation using the current monthly retirement

benefit from 2017 and 2018, giving me at least 9 different valuations from that expert alone. It would be arbitrary to simply choose one of Mr. Cramer's values to distribute the pension to Wife. Mr. Myers advocates for the use of one of the three 2018 statement valuations as being closer to the date of distribution. However, that still requires me to determine whether Wife will retire at age 62 or 58.1 or using the valuation of her current pension amount as if she was no longer employed in 2018 when the parties actually separated in 2015. Husband's expert did not provide a valuation of the pension as if Wife discontinued employment as of the date of separation in 2015.

As I said during the first meeting with these parties, the amount of variables in these valuation processes leads me to believe that the fairest way to distribute Wife's PSERS pension is to divide the marital portion by QDRO. I still believe this to be true. I gave the parties an opportunity to agree on a value by stating that I believed that PSERS was the entity with the surest knowledge of what the plan had accumulated for Wife. Husband would not agree. I did state my experience with PSERS plans during this process, but my decision in this matter has nothing to do with knowledge of these plans outside of the evidence presented in this case. This process is to secure equitable treatment of both parties as stated in section 3502. Nothing could be more equitable and could assure economic parity to these parties than the division of the marital portion of Wife's PSERS equally to both parties. That allows Wife to make the decision as to when she retires at the time such a decision should be made rather than projecting that decision onto Wife when she is only 41 years old today. It also requires the parties to share the risks inherently involved in the collection of a pension, especially one such as this which is underfunded as stated by Mr. Cramer during his testimony. Without the parties agreeing to a value of this PSERS plan, I do not have the evidence or personal resources to arbitrarily choose one of the many valuations presented to me to apply an immediate offset, particularly considering the great disparity between the expert opinions. Consequently, my recommendation for distribution of property will include the equal division of the marital portion of Wife's PSERS pension.

Master's Report and Recommendation for Equitable Distribution, 2/19/19, at

6-9.

The Master determined, and the trial court agreed, that rather than engage in speculation as to what Wife's retirement age will be and as to which one of each expert's multiple calculations represents a correct immediate offset valuation, a division of the marital portion of the PSERS pension by QDRO would be the most equitable resolution.

Similarly, in vacating the trial court's decision to use the immediate offset method to distribute the husband's Civil Service Retirement System pension and at the same time retain jurisdiction to allow the pension to be revalued in event husband retired before age 65, this Court observed:

> [E]ach party introduced expert testimony analyzing the present value of the pensions of both Husband and Wife. Wife's federal civil service retirement pension was valued at $5,478 and is not at issue. The conclusions of the experts with regard to the value of Husband's pension, however, varied significantly, depending upon retirement age, the discount rate and other variables utilized. The trial court, itself, remarked that the valuations placed upon Husband's pension ranged from "a low of $24,205 to a high of $170,348.78." Opinion, dated July 11, 1991, at 3. The trial court commented that:
>
>> The protracted proceedings in this case have served to underscore the less than scientific ability of experts to reach a fair valuation of a fully vested, but not matured, defined benefit pension.
>
> Opinion, dated 7/11/91 at 5.
>> From this comment and the testimony of the pension experts, we fail to understand how the trial court, with equity, could have used the immediate offset method in distributing Husband's pension in the present case. The trial court has, in essence, utilized a present value to order a deferred payment. We have held such determinations to be an abuse of discretion in the past. Here, we are likewise constrained to find that a formula for the distribution of marital assets utilizing the deferred distribution method where the marital asset offset is based on present value is inappropriate.

***Elhajj v. Elhajj***, 605 A.2d 1268, 1270 (Pa.Super. 1992) (citations omitted).

In the same vein, the ***Conner*** Court employed the following rationale in support of its finding that the trial court had abused its discretion by adopting a present value for the husband's judicial income, a retirement annuity:

> Likewise, the soundness of the trial court's valuation is speculative at best due to the lack of evidence supporting the court's arbitrary determination that Husband would retire at age 65. There is ample empirical and statistical evidence to justify the conclusion that all workers do not retire at the same age. A variety of factors impact on an individuals [*sic*] selection of a retirement age. In the great majority of qualified defined benefit plans the participant is given an option to retire within a range of dates. The breadth of this range is from the date an individual becomes vested and decides to opt for a vested deferred retirement benefit ... to the date an individual is required to terminate employment as a result of demonstrable physical or mental incapacity to perform .... Because of the actual range of retirement options available to the employed spouse, evaluators who assume that all workers retire at the same age or point are to be viewed with skepticism.

***Conner v. Conner***, 217 A.3d 301, 313–14 (Pa.Super. 2019) (citation omitted) (brackets in original).

Husband's assertions to the contrary, the Master and, subsequently, the trial court, did not contravene the purpose of the Divorce Code by "refusing" to make an immediate offset valuation of Wife's PSERS benefit. Rather, upon hearing the expert testimony and reviewing their numerous valuations, the Master determined that a deferred distribution of the marital portion of Wife's PSERS pension would be the most equitable method in light of the circumstances presented herein. Following its review, the trial court agreed.

Husband essentially asks this Court to reweigh the testimony and calculations of the experts and give credence to that of Mr. Cramer in assigning a present day value for the immediate offset of the marital portion of Wife's PSERS pension. However, the trial court, as finder of fact, was "free to believe all, part, or none of the evidence," and this Court will not disturb the trial court's credibility determinations. *Lee v. Lee*, 978 A.2d 380, 382 (Pa. Super. 2009). Mindful of the trial court's wide discretion to value assets for purposes of equitable distribution and this Court's highly deferential standard of review, we find no error in the trial court's decision to adopt the Master's reasoning that the deferred distribution method would best effect economic justice between Husband and Wife.

Finally, Husband argues the following language in the May 23, 2019, Order fails to protect his interest in Wife's PSERS pension in the event of her decease or disability, in light of the fact that a PSERS Account Statement provides information for a participant relative to the appointment of a beneficiary: "The QDRO[2] shall provide that Husband is to continue to collect his portion in the event of the death of Wife, if the plan so allows." Brief of Appellant at 18-20. Husband baldly posits the Order should require that Wife

_____

[2] "A QDRO is an order which creates or recognizes the rights of an alternate payee to receive all or a portion of the benefits payable to a participant under [a pension] plan." *Getty v. Getty*, 221 A.3d 192, 195 n.4 (Pa.Super. 2019) (citation omitted).

designate him to be the beneficiary of the death and/or disability benefit of the PSERS pension. *Id*. at 21.

While this Court is not bound by the holdings of our colleagues in the Commonwealth Court, our settled precedent permits us to turn to those decisions for guidance when appropriate and cite to this authority where it is persuasive. **Commonwealth v. Hunt**, 220 A.3d 582, 591 (Pa.Super. 2019). In **Kirsop v. Pub. Sch. Employees' Ret. Bd**., 747 A.2d 966, 967 (Pa.Commw. 2000), the Commonwealth Court considered an appeal from an order of the Public School Employees' Retirement Board which held that a former spouse was not entitled to 100% of the proceeds from the retirement account of her deceased former husband but rather was limited to 50% of the death benefits pursuant to a marital settlement agreement and an unexecuted QDRO. Following husband's death, former wife received notification from PSERS of its intention to pay her 100% of his death benefits in accordance with the nomination of benefits form; however, after learning that the parties had been divorced and of the existence of the marital settlement agreement, PSERS requested copies of the divorce decree, the agreement, and the unsigned QDRO. Thereafter, former wife was informed that she was entitled to just 50% of the marital portion of the retirement benefits as specified in the marital settlement agreement and incorporated into the divorce decree. PSERS concluded that these documents were "a clear written indication of the decedent's desire to change the terms of the beneficiary designation.... [and

that PSERS] is required to apportion the death benefit in accordance with the Court Order." ***Id***.

The Court stated its displeasure with former wife for failing to perform her duty under the marital settlement agreement and called her attempt to use that failure as the basis for her argument she is entitled to 100% of the benefits "disingenuous." The Court further noted that if former wife had failed to finalize the QDRO and former husband had filed a new beneficiary form naming the couple's two children as the beneficiaries to her exclusion, she would be arguing that the QDRO and the settlement agreement show the intent of the parties that she was entitled to 50% of the marital share of the PSERS benefits. ***Id***. at 970-71, n. 6. The Court highlighted, ***id***. at 970, that Section 3323(d) of the divorce code which provides:

> **(d) Substitution for deceased party.--**If one of the parties dies after the decree of divorce has been entered, but prior to the final determination in such proceeding of the property rights and interests of the parties under this part, the personal representative of the deceased party shall be substituted as a party as provided by law and the action shall proceed.

23 Pa.C.S.A. § 3323(d).

As the foregoing illustrates, PSERS is bound to enforce a QDRO that works as an attachment order of one's pension fund pursuant to the Divorce Code even where that QDRO has not been properly executed. Herein, the QDRO shall provide that Husband is to collect his portion of Wife's PSERS benefit in the event of her death. PSERS will be bound to enforce this provision

of the Order; therefore, Husband's unsupported claim that his interest in Wife's pension is not protected lacks merit.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/15/2020